[Civ. No. 34945. Second Dist., Div. One, May 8, 1970.]

LOS ANGELES FIRE AND POLICE PROTECTIVE LEAGUE,
Plaintiff and Appellant, v.
JAMES F. RODGERS et al., Defendants and Respondents.

(1970)

---

## COUNSEL

Marks, Sherman & London, Robert H. London and Burton Marks for Plaintiff and Appellant.

Richard D. Aldrich, Overton, Lyman & Prince, Carl J. Schuck and Brenton F. Goodrich for Defendants and Respondents.

## Opinion

**WOOD, P. J.**—In its first amended complaint, the Los Angeles Fire and Police Protective League, an unincorporated association, sought damages for alleged defamation by defendants of police members of the association. Three individuals, Duffy, Wagner, and Whisman, as plaintiffs, also sought damages for alleged defamation. Defendants' demurrers to said complaint were sustained without leave to amend as to plaintiff association on the ground that no cause of action was stated as to that plaintiff. The demurrer was overruled as to the individual plaintiffs.

The allegations of the first amended complaint were in substance as follows:

Plaintiffs Duffy, Wagner, and Whisman are police officers employed by the City of Los Angeles. Each of said plaintiffs enjoys a good name and reputation as a police officer; and each of said plaintiffs is a member in good standing of the Los Angeles Fire and Police Protective League. The league is an unincorporated association consisting of all members of the Los Angeles Fire and Police Departments, and it was formed for the purpose of securing mutual benefits and protection for its members. The league prosecutes this action on behalf of approximately 5,000 members of the Los Angeles Police Department, it being impractical to bring them all before this court as individual plaintiffs. The league is a specifically identifiable entity, composed of specifically identifiable members; it maintains separate offices and its own administrative staff; and it represents each and every police officer, and each and every fireman, employed by the City of Los Angeles. By reason of the great number of such police officers, each and all of whom constitute a readily identifiable class, such members have formed and joined the league for the purposes, among others, of prosecuting lawsuits on behalf of each and all of said class members; and the league is prosecuting this action on behalf of itself and its members to avoid multiplicity of action. The league enjoys a good reputation in the community; and each and every member of the league enjoys a reputation in the community for fair and honest dealing with the public and for exercise of reasonable restraint in the discharge of his duties as a law enforcement officer. On December 22, 1967, on a radio broadcast over station KLAC to the general Los Angeles area, defendants and each of them stated to the general public that plaintiffs Duffy, Wagner, Whisman, and the members of the league, and each of them, brutally manhandled defendant Rodgers, inflicted karate chops and karate holds on Rodgers, struck Rodgers, committed unprovoked assault and battery on Rodgers, and were guilty of police brutality. (Here, there are allegations that defendants, and each of them, made substantially similar statements to the general public in the Los Angeles

area on December 7, 1967, on a telecast over station KTTV; on January 15, 1968, on a telecast over the ABC network; on February 22, 1968, on a radio broadcast over station KLAC; on March 27, 1968, on a telecast over station KTTV; on April 1, 1968, on a telecast over the ABC network; and on April 2, 1968, at a press conference.) Said statements on their face charge that plaintiffs Duffy, Wagner, Whisman and members of plaintiff league were guilty of crimes of wilful inhumanity or oppression toward a prisoner under their care or custody and were guilty of the crime of assault and battery, a felony; and said statements were so understood by members of the general public who heard or read said statements. Said statements were knowingly false and were made recklessly and maliciously. On March 27, 1968, defendants, and each of them, stated on a television broadcast over station KTTV, that an investigation which had been made by the district attorney of Duffy, Wagner, and Whisman was a "cover-up," was false, and was a "whitewash" of Duffy, Wagner, and Whisman and members of the league; and that the investigation was the fruit of a conspiracy to exculpate and exonerate plaintiffs from the consequences of said wrongful conduct. (Here it is alleged that defendants, and each of them, made similar statements regarding the investigation at a press conference on April 2, 1968.) Said statements charged that plaintiffs Duffy, Wagner, Whisman and members of plaintiff league were guilty of a crime, to wit: a conspiracy to pervert and obstruct justice; and the statements were so understood by members of the general public who heard or read such statements. Said statements were knowingly false; were made maliciously; and exposed plaintiffs Duffy, Wagner, and Whisman and members of plaintiff league, to hatred, scorn, contempt, ridicule and obloquy, and injured each of them in his occupation. As a proximate result of said libelous and slanderous statements, plaintiffs Duffy, Wagner, and Whisman each suffered general damages in the amount of $150,000; and because said statements were made maliciously, each of those plaintiffs is entitled to exemplary damages in the amount of $1,000,000. Each of said defamatory statements was intended, and was understood by members of the general public, to impute to the Los Angeles Police Department as a whole and to each individual member thereof and to the members of plaintiff league a lack of morals and ethics and the general character traits of senseless brutality and inhumanity and a wilful failure on their part to abide by their oaths of office, thereby tending to directly injure each and every member of the Los Angeles Police Department and each and every member of plaintiff league with respect to their offices and professions. As a proximate result of said libelous and slanderous statements, the members of the Los Angeles Police Department and each and every member of plaintiff league have sustained general damages in the total sum of $5,000,000. Because said defamatory statements were made maliciously, the members of plaintiff league are entitled to exemplary damages of $5,000,000.

Each defendant demurred to the first amended complaint on several grounds. One of the grounds (set forth in paragraph 2 of each demurrer) was that the first amended complaint did not state facts sufficient to constitute a cause of action in favor of plaintiff association.

In ruling on the demurrers, the court made an order in part as follows: "Each Demurrer sustained without leave to amend on grounds stated in paragraph 2 thereof, plaintiffs' counsel having represented in open Court that plaintiff Los Angeles Fire and Protective League can add nothing more to the First Amended Complaint by way of further amendment. Demurrers otherwise overruled." (Some grounds of demurrer were directed to the alleged causes of action of plaintiffs Duffy, Wagner, and Whisman.)

 Appellant (league) contends that it has standing to maintain a class action (Code Civ. Proc., § 382) on behalf of its police members for damages for alleged defamation of such members.

Respondents contend, among other things, that the league does not have standing to maintain such class action because the league itself is not a member of the class (police officers) allegedly defamed, and because firemen members of the league are not similarly situated, and do not have community of interest, with police members of the league. (It was not alleged that firemen were defamed.) Respondents further contend that even if it were assumed that plaintiff has standing to maintain a class action on behalf of its members, it cannot, as a matter of law, maintain an action for damages for slander on behalf of such a large group (5,000) of persons.

It is to be noted that respondents do not question plaintiff league's capacity to sue or said plaintiff's right to come to court—respondents concede that, under the 1967 amendment to section 388 of the Code of Civil Procedure, an unincorporated association may sue in its name. "However, the question of standing to sue is different from that of capacity. Incapacity is merely a legal disability, such as infancy or insanity, which deprives a party of the right to come into court. The right to relief, on the other hand, goes to the existence of a cause of action. It is not a plea in abatement, as is lack of capacity to sue. Where the complaint states a cause of action in someone, but not in the plaintiff, a general demurrer for failure to state a cause of action will be sustained." (*Parker* v. *Bowron*, 40 Cal.2d 344, 351 [254 P.2d 6].) In the present case, as previously stated, the court sustained defendants' general demurrers on the ground that no cause of action was stated as to plaintiff association.

With reference to actions under section 382 of the Code of Civil Procedure, it has been said: "The statutory provision [citation] is based upon the doctrine of virtual representation and is an exception to the general

rule of compulsory joinder of all interested parties. . . . '[R]egardless of which of the alternative conditions of the statute is invoked as authorizing a class proceeding, it has been uniformly held that there must be a well-defined "community of interest" in the questions of law and fact involved as affecting the parties to be represented.' " (*California Gasoline Retailers* v. *Regal Petroleum Corp.,* 50 Cal.2d 844, 850 [330 P.2d 778], quoting from *Parker* v. *Bowron, supra.*)

In the *Parker* case, the court held (p. 357) that the petitioner did not have standing to maintain the proceeding, and said (p. 353) that no facts were alleged to bring the petitioner within this well-established rule regarding class suits; petitioner did not claim to be a member of the interested class; he was not "similarly situated" with those whom he pretended to represent; there was no common interest in the subject matter between petitioner, who was not a city employee, and the city employees whom he sought to represent; and he "cannot give himself standing to sue by purporting to represent a class of which he is not a member." (See *California Gasoline Retailers* v. *Regal Petroleum Corp., supra,* p. 850.)[1]

In the present case, plaintiff league is not a member of the class (police officers employed by City of Los Angeles), and is not employed by the city. Thus, it is not similarly situated, and does not share a community of interest in the alleged defamatory statements with the police officers—it is not claimed that the league was defamed. The firemen members of the league do not have a community of interest with the police members in the alleged defamatory statements—it is not alleged that the firemen were defamed. Also, it does not appear that the police members (about 4,997) of the league other than Duffy, Wagner, and Whisman, have a community of interest in the alleged defamation of Duffy, Wagner, and Whisman. Duffy, Wagner, and Whisman are parties plaintiff, and each of them seeks relief in his own right, and damages are alleged as to them separately from the damages alleged as to the class (all police officers). There is an allegation that defendants stated that ". . . the members of the plaintiff League, and each of them, brutally manhandled defendant Rodgers . . . ," but it also appears from all of the allegations that the actual controversy, as distinguished from the constructive controversy, is a matter between the defendants and the three individual plaintiffs (Duffy, Wagner, and Whisman). As hereinabove shown, in addition to the allegation to the effect that defendants stated that Rodgers was manhandled by the 5,000 police members of the league, there are allegations that as a proximate result of the defamatory statements, the

---

[1]In *California Gasoline Retailers* v. *Regal Petroleum Corp.,* it was said (pp. 850-851) that plaintiff, under the rule in *Parker* v. *Bowron,* was not a proper party plaintiff, but that the amendment of the complaint to include a member of the class as a party plaintiff cured the defect.

plaintiffs Duffy, Wagner, and Whisman each suffered general damages in the amount of $150,000, and that each of those plaintiffs is entitled to punitive damages of $1,000,000. After those allegations, there is an allegation to the effect that the defamatory statements were understood by members of the public to impute to the Los Angeles Police Department "as a whole," and to each individual member thereof, the character traits of senseless brutality and wilful failure to abide by their oath of office. It cannot properly be concluded that by reason of a statement that three officers brutally manhandled a suspect, members of the public who heard the statement would reasonably infer that all other officers (4,997) in the police department engaged in brutality. It does not appear that the other 4,997 officers are similarly situated, or have a community of interest, with officers Duffy, Wagner, and Whisman in statements allegedly defaming those three officers.

█ Furthermore, defamation is a personal tort, and a cause of action for damages for defamation cannot be assigned (see *Franklin* v. *Franklin*, 67 Cal.App.2d 717, 726 [155 P.2d 637]). In the present case, it is reasonable to conclude that among the 5,000 officers, there would be different questions of law and fact with reference to issues such as to the reputation of each officer, malice by the defendants as to each officer, the defamatory nature of the statements as to each officer, and whether each officer would be required to post the undertaking required by section 830 of the Code of Civil Procedure (see *Writers Guild of America, West, Inc.* v. *Superior Court*, 273 Cal. App.2d 841, 847 [78 Cal.Rptr. 620], wherein it was held that each of the plaintiffs in a libel action was required to post a $500 undertaking). As said in *Slakey Bros. Sacramento, Inc.* v. *Parker*, 265 Cal.App.2d 204, 207 [71 Cal.Rptr. 269], wherein a judgment dismissing a class action on behalf of 46 persons for damages for deceit was affirmed: "[W]hen each individual's right to recover depends upon facts peculiar to his own case, the individuals cannot be brought under the umbrella of a class action."

█ The court did not err in sustaining the general demurrer on the ground that no cause of action was stated as to the league.

█ It further appears, as respondents contend, that under the allegations of the first amended complaint herein, plaintiff league cannot, as a matter of law, maintain an action for damages for alleged defamation of such a large group (5,000) of persons. (See *Noral* v. *Hearst Publications, Inc.*, 40 Cal.App.2d 348 [104 P.2d 860]; 2 Witkin, Summary of Cal. Law (1960) Torts, § 105, p. 1276; Prosser, Law of Torts (3d ed.), pp. 767-768; 70 A.L.R.2d 1385; 41 Cal.L. Rev. 144-145; 1 U.C.L.A. L.Rev. 176; 29 Cal.L. Rev. 83.)

No contention is made herein that the court abused its discretion in sus-

taining the demurrers without leave to amend. As previously stated, the minute order upon sustaining the demurrers (to first amended complaint) without leave to amend stated that plaintiff's counsel represented in court that plaintiff league could add nothing more to the first amended complaint by way of further amendment.

The judgment (order) of dismissal is affirmed.

Lillie, J., and Gustafson, J., concurred.