[L.A. No. 29851. In Bank. Oct. 21, 1971.]

FRANK La SALA et al., Plaintiffs and Appellants, v.
AMERICAN SAVINGS & LOAN ASSOCIATION et al.,
Defendants and Respondents.

## COUNSEL

Rich & Ezer and Robert H. Somers for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, Anthony C. Joseph and Andrea Sheridan Ordin, Deputy Attorneys General, as Amici Curiae on behalf of Plaintiffs and Appellants.

Daniel S. McDonald, Daniel L. Shafton, Mark Brandler and John R. Hetland for Defendants and Respondents.

## OPINION

**TOBRINER, J.**—Plaintiffs Frank La Sala, Grace La Sala, and Dorothy Iford brought a class action against American Savings & Loan Association,[1] (hereinafter "American") alleging that a provision in American's form of trust deed, which permits American to accelerate if the borrower executes a junior encumbrance on the secured property, constituted an invalid restraint upon alienation. American cffered to waive enforcement of that provision as to Iford and the La Salas. The superior court then held that by reason of this waiver the named plaintiffs no longer represented the class, and dismissed the action.

We hold that whenever the dismissal of a class action stems from a defendant's grant of benefits to the representative plaintiffs, which are not provided to the class as a whole, the court may not dismiss the action without notice to the class; we therefore conclude that the court erred in the dismissal in the present case. We further inquire into the defendants' contentions that we should affirm the superior court's order of dismissal on the ground that the action is not a proper class action or that plaintiffs cannot prevail on the merits. We reject these contentions, and reach the following conclusions: (1) Although the named plaintiffs are not members of the class that they purport to represent as the complaint now stands, this fact cannot justify a dismissal of the action without affording plaintiffs an opportunity to amend their pleading. (2) Plaintiffs' reliance upon the contention that American's trust deeds are contracts of adhesion does not

---

[1]Defendant Pioneer Investors Savings and Loan Association appears as a co-beneficiary on the La Sala and Iford trust deeds; we are informed by counsel that Pioneer and American merged on December 31, 1968, with the surviving corporation bearing the name of American Savings and Loan Association. Defendant Investor Savings and Loan Association is the trustee of the Iford trust deed, and defendant First Charter Financial Corporation is the trustee of the La Sala trust deed.

preclude the maintenance of this suit as a class action. (3) With respect to defendants' contention as to the disposition of the case on the merits, we hold that, although the clause in American's trust deed is not per se an illegal restraint upon alienation, the enforcement of that clause unlawfully restrains alienation whenever the borrower's execution of a junior encumbrance does not endanger the lender's security. We therefore reverse the judgment that dismisses the present action on behalf of the class, and remand to the superior court for further proceedings as set forth in this opinion.

## 1. *Statement of facts.*

In this appeal we assume as correct the allegations in plaintiffs' first amended complaint, and the declarations of Dorothy Iford, Frank La Sala, and Norman McLeod filed with the superior court, and base our statement of facts upon those allegations.

American utilizes a form deed of trust which contains, on the reverse side in fine print, a clause stating: "Should Trustor sell, convey, transfer, dispose of or further encumber said property, or any part thereof, or any interest therein, or agree to do so without the written consent of Beneficiary being first obtained, then Beneficiary shall have the right, at its option, to declare all sums secured hereby forthwith due and payable." We shall refer to this clause as a "due-on-encumbrance" provision; we thereby distinguish it from clauses which provide for acceleration only upon the sale, but not upon the encumbering of secured property.

On August 13, 1958, plaintiff Dorothy Iford and her late husband borrowed $9,500, at 6.6 percent interest, from American, and executed a promissory note and a trust deed which included the due-on-encumbrance provision. On November 20, 1963, Frank and Grace La Sala, the other named plaintiffs, borrowed $20,700 from American at 6 percent interest; they also executed a note and a trust deed with the due-on-encumbrance clause.[2]

On June 9, 1969, the La Salas borrowed $3,800 from Fred D. Hudkins, and executed a note and second deed of trust; Statewide Home Mortgage Co. acted as loan broker. On June 11, 1969, Iford borrowed $2,500 from Edward and June Ulrich, and also gave a note and second trust deed; Lanco Mortgage Co. acted as broker. About July 7 of 1969 both Iford and La Salas received a form letter from American notifying them of

---

[2]The La Salas received a loan in excess of 80 percent of the appraised value of their property and, as required by Financial Code section 7153.2, certified in writing that "they have not given, and will not, in connection with their purchase of said property, give or execute a lien or charge on said property" other than defendants' trust deed.

American's right to accelerate. The letter to La Salas offered to waive American's right to accelerate in return for a payment of $150 and an increase in the rate of interest on the first deed of trust from 6 to 9 percent. The letter to Iford was identical in form, but asked a waiver fee of $50 and an increase in interest to 8.75 percent.

Plaintiffs then filed the present action for declaratory relief "for themselves and all other persons similarly situated." Paragraph IV of their first amended complaint described the class to be represented as persons meeting three criteria: (a) those who borrowed from defendants during the four years preceding the filing of the action; (b) executed trust deeds with due-on-encumbrance clauses; and (c) did not execute separate written acknowledgments of such clauses. The complaint sought an injunction against enforcement of the due-on-encumbrance clause, a declaration that the clause was void, compensatory damages in an unspecified amount, and punitive damages. Defendants demurred to the complaint; the demurrer was scheduled for hearing on August 25, 1969.

On August 15, apparently without noticed motion, the parties appeared in court.[3] Defendants' counsel orally offered to waive its right to accelerate against the named plaintiffs based upon the existing secondary loans. The court then, *sua sponte,* ruled that "there is no justiciable issue . . . in respect to this litigation," and ordered the matter placed off calendar. Defendants then requested the court to dismiss the action for lack of a representative plaintiff; plaintiffs opposed dismissal without prior notice to the class. The court ruled that "there is no individual plaintiff remaining who is or could be construed to be a representative of the class," and on that basis ordered dismissal without prejudice.[4]

2. *The superior court erred in dismissing the action on behalf of the class.*[5]

We begin our discussion of this issue by emphasizing the specific and narrow ground upon which the superior court dismissed the class action. The court did not determine that the complaint did not frame a proper class action, or that the named plaintiffs did not, at the commencement of the

[3]Plaintiffs raised no objection, either in the superior court or on appeal, to the absence of a written and noticed motion.

[4]The parties stipulated that "the remarks of the Court in ruling on the motion to dismiss will constitute findings of fact . . . and conclusions of law, with respect to that order and judgment of dismissal."

[5]In the Court of Appeal plaintiffs contended that the superior court also erred in dismissing their individual claims to declaratory relief. This contention was not urged, however, in plaintiffs' petition for hearing nor in their oral argument to this court, and consequently we do not discuss it.

action, constitute suitable representatives of the class; defendants' demurrer alleged both such grounds but the court, without rendering a ruling, dropped it from the calendar. Apparently the court held only that the named plaintiffs, by reason of the benefits they received from defendants, no longer controverted the issue with defendants and thus became disqualified to represent the class.

■ When a plaintiff sues on behalf of a class, he assumes a fiduciary obligation to the members of the class, surrendering any right to compromise the group action in return for an individual gain. ■ Even if the named plaintiff receives all the benefits that he seeks in the complaint, such success does not divest him of the duty to continue the action for the benefit of others similarly situated.

We find frequent examples of the above principle in the recent desegregation cases. In *Buckner* v. *County School Board of Greene County, Virginia* (4th Cir. 1964) 332 F.2d 452, named plaintiffs who sued in a class action to desegregate a school were promptly transferred to an integrated school. The trial court then dismissed the action as moot. The Court of Appeals reversed, holding that the plaintiffs could continue the action to obtain relief for the class they represented. (332 F.2d at p. 454; see *Banks* v. *Lockheed-Georgia Company* (N.D.Ga. 1968) 46 F.R.D. 442; cf. *In re William M.* (1970) 3 Cal.3d 16, 23-24 [89 Cal.Rptr. 33, 473 P.2d 737].) In a similar case, the court held that a black doctor, who brought a class action to end exclusion of blacks from hospital staff privileges, could continue to prosecute the action even though the hospital admitted him to its staff. (*Cypress* v. *Newport News General & Nonsectarian Hosp. Ass'n* (4th Cir. 1967) 375 F.2d 648, 657-658.)

In *Diaz* v. *Quitoriano* (1969) 268 Cal.App.2d 807 [74 Cal.Rptr. 358], the only California case in point, the plaintiff filed a class action to mandate the county welfare department to notify welfare recipients of their right of administrative appeal. By the very institution of the action the named plaintiff demonstrated that he had himself learned of his right of appeal. The court, however, permitted plaintiff to prosecute the action on behalf of the class he represented.

■ We conclude that American's waiver of acceleration as to La Salas and Iford does not mechanically render those plaintiffs unfit per se to continue to represent the class. Whether the named plaintiffs will fairly and adequately protect that class frames an issue that rests in the discretion of the trial court (see 3B Moore, Federal Practice (2d ed. 1969) ¶23.50). ■ In making that determination, the trial court may take into account that the named plaintiffs have already obtained their individual benefits

from the action; plaintiffs who have nothing at stake often will not devote sufficient energy to the prosecution of the action; further, the receipt of benefits by the named plaintiffs may sometimes create a conflict of interest between the class and its would-be representatives. On the other hand, as in the cited cases, the court may find that the named plaintiffs will continue fairly to represent the class, and, therefore, permit them to continue the class litigation.

If, however, the court concludes that the named plaintiffs can no longer suitably represent the class, it should at least afford plaintiffs the opportunity to amend their complaint, to redefine the class, or to add new individual plaintiffs, or both, in order to establish a suitable representative. (See *Cal. Gas. Retailers* v. *Regal Petroleum Corp.* (1958) 50 Cal.2d 844, 850-851 [330 P.2d 778]; *Dolgow* v. *Anderson* (E.D.N.Y. 1968) 43 F.R.D. 472, 492; *Gaddis* v. *Wyman* (S.D.N.Y! 1969) 304 F.Supp. 713, 714-715.) If, after the court has thus extended an opportunity to amend, the class still lacks a suitable representative, the court may conclude that it must dismiss the action. At this point, the further issue arises whether the court must notify the class of the proposed dismissal.

We set forth the reasons why, in the event of proposed dismissal, after amendment, we believe the court should notify the members of the class. Federal Rules of Civil Procedure, rule 23(e) provides that "A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." California observes a similar rule as to dismissals of consumer class actions (Civ. Code, § 1781, subd. (f)) and stockholders' suits (*Ensher* v. *Ensher, Alexander & Barsoom* (1960) 187 Cal.App.2d 407, 410 [9 Cal.Rptr. 732]; *Spellacy* v. *Superior Court* (1937) 23 Cal.App.2d 142, 147 [72 Cal.Rptr. 262]). Although no California statute or decision governs dismissal of class actions generally, we have previously suggested that trial courts, in the absence of controlling California authority, utilize the class action procedures of the federal rules. (See *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 709 [63 Cal.Rptr. 724, 433 P.2d 732]; *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 821 [94 Cal.Rptr. 796, 484 P.2d 964].)

Under the federal procedure, however, when the court dismisses an action on the ground of its *impropriety* as a class action, no notice need be given the class since, in theory, the class never composed a party to the suit. (See 3B Moore, Federal Practice (2d ed. 1969) ¶23.80[3].) Dismissal for lack of a representative plaintiff constitutes, in substance, a holding that the suit does not qualify as a class action; hence, notice of the

dismissal becomes unnecessary. (See *Polakoff* v. *Delaware Steeplechase and Race Ass'n* (D.Del. 1966) 264 F.Supp. 915.)

 Nevertheless, in the present case, the superior court did not find that plaintiffs were not, at the commencement of the action, proper representatives; instead, the court ruled that by reason of defendants' waiver Iford and La Sala were *no longer* suitable representatives. On these facts, we conclude that dismissal of the action requires prior notice to the class.

A history of the cases and a recognition of the practical effect of dismissal of the action buttresses our conclusion that in the present circumstances notice to the class should have been given. In the earlier days of class actions—mostly stockholders' suits—plaintiff representatives and defendants would often enter into settlements in which the representatives dismissed the action in return for a private and often secret consideration. (See 3B Moore, Federal Practice (2d ed. 1969) ¶ 23.80[4].) With the prohibition of this tactic in federal rule 23(e) and in state court decisions, defendants conjured up the practice of affording the representative plaintiffs their individual relief and then moving to dismiss as moot; yet the courts, as we have seen (*ante* at p. 872) rejected the contention of mootness, often permitting the named plaintiffs to continue the litigation. Another such strategy finds illustration in *Brendle* v. *Smith* (S.D.N.Y. 1946) 7 F.R.D. 119, in which plaintiff representatives and defendants stipulated to a summary judgment; here, too, the court held this procedure to be equivalent to a settlement and required notice to the class.

In the present case, American has waived its acceleration clause only as to La Salas and Iford. If other borrowers bring a class action, American may again waive as to those representative borrowers, and again move to dismiss the action. Such a procedure could be followed ad infinitum for each successive group of representative plaintiffs. If defendant is permitted to succeed with such revolving door tactics, only members of the class who can afford to initiate or join litigation will obtain redress; relief for even a portion of the class would compel innumerable appearances by individual plaintiffs. Yet the function of the class action is to avoid the imposition of such burdens upon the class and upon the court. (See *Hansberry* v. *Lee* (1940) 311 U.S. 32, 41 [85 L.Ed. 22, 26-27, 61 S.Ct. 115, 132 A.L.R. 741].) If we sanction American's tactic defendants can always defeat a class action by the kind of special treatment accorded plaintiffs here and thus deprive other members of the class of the benefits of the litigation and any notice of opportunity to enter into it.

In sum, on remand of this case to the superior court, that court may wish to reconsider its determination that plaintiffs no longer suitably represent

the class. If the court reaffirms its adverse disposition of such representation, it should permit plaintiffs an opportunity to amend their complaint to redefine the class or to add additional representatives. Finally, if the amendment fails to establish a suitable representative, the court should not dismiss the action on this ground without undertaking such measures as it may direct to notify the members of the class.[6] ▮ The superior court in the instant case erred in dismissing plaintiffs' complaint without any notice to the class plaintiffs purported to represent.

3. *We cannot affirm the superior court's dismissal of this action upon the additional grounds advanced by defendants on this appeal.*

Defendants argue that even if the superior court's findings and conclusions do not suffice to support a dismissal without notice to the class, the order of dismissal should nonetheless be affirmed on appeal. They advance three reasons for this proposal: (a) that plaintiffs never were members of the class defined in the complaint and thus cannot maintain this suit as a class action; (b) that the alleged members of the class lack the community of interest in common issues essential to a class action; (c) that in any event plaintiffs' cause of action fails on the merits in that American's due-on-encumbrance clause is a lawful restraint on alienation on its face, and as enforced against plaintiffs and the represented class. We examine each of defendants' contentions in turn.

(a) *Although the named plaintiffs are not members of the class that they purport to represent as the complaint now stands, this fact cannot justify a dismissal of the action without affording plaintiffs an opportunity to amend their pleading.*

Plaintiffs' first amended complaint defines the class of persons represented as those individuals meeting three conditions, the first of which is that "they borrowed money from defendant Savings and Loan during the four years immediately preceding the filing of this action." La Salas, however, borrowed money in 1963, and Iford in 1958—six and eleven years, respectively, before the date of filing of this action. Thus neither La Salas nor Iford come within their own complaint's definition of the class.

---

[6]Defendants allege that plaintiffs' contention that the court must give notice to the class "is a guise to obtain the 'relief' sought by the real (as opposed to the nominal) plaintiffs in this action—access to American's confidential loan files to create a customer list for purposes of soliciting junior loans by undisclosed real plaintiffs, junior lenders and junior loan brokers." In the absence of evidence in the record we have no way to evaluate the truth of such a charge. We believe, however, that the discretion of the superior court as to the form and manner of notice would include the power to render protective orders, when necessary, to ensure that any listing of class members would not be exploited for collateral commercial purposes.

██ The cases uniformly hold that a plaintiff seeking to maintain a class action must be a member of the class he claims to represent.[7] Defendants contend that since plaintiffs are not members of the class described in the complaint, this court should affirm the judgment dismissing the action for lack of a representative plaintiff; moreover, since plaintiffs never did represent the class, the court may dismiss the action without notifying the alleged members of the class.

██ The requirement that the representative be a member of the class derives from the principle that joinder of plaintiffs in a class action should consist of those sharing "a well-defined 'community of interest' in the questions of law and fact involved" (*Weaver* v. *Pasadena Tournament of Roses* (1948) 32 Cal.2d 833, 837 [198 P.2d 514]).[8] At the commencement of the present action, the named plaintiffs and the class shared a common concern: all were persons against whom American had threatened to enforce its due-on-encumbrance clause. Yet the complaint arbitrarily restricted the class to borrowers within the preceding four years (i.e., from July 17, 1965 to July 17, 1969).[9] The community of interest in the subject matter of this litigation clearly extends beyond any four-year period; it encompasses all borrowers, including plaintiffs, who have been threatened with acceleration under the due-on-encumbrance clause within the period of the statute of limitation.

██ In sum, plaintiff's nonmembership in the class defined by the complaint stems not from the lack of a community of interest between plaintiffs and the class, but from arbitrary and inadvertent limitation of the class.[10] Of course, an amendment could readily cure such a defect in

---

[7]See *Cal. Gas. Retailers* v. *Regal Petroleum Corp.* (1958) 50 Cal.2d 844, 850 [330 P.2d 778]; *Parker* v. *Bowron* (1953) 40 Cal.2d 344, 353 [254 P.2d 6]; *Greater Westchester Homeowners Assn., Inc.* v. *City of Los Angeles* (1970) 13 Cal.App.3d 523, 526 [91 Cal.Rptr. 720]; *Los Angeles Fire & Police Protective League* v. *Rodgers* (1970) 7 Cal.App.3d 419, 424 [86 Cal.Rptr. 623].

[8]See Code of Civil Procedure section 378; *Cal. Gas. Retailers* v. *Regal Petroleum Corp.* (1958) 50 Cal.2d 844, 850 [330 P.2d 778]; *Los Angeles Fire & Police Protective League* v. *Rodgers* (1970) 7 Cal.App.3d 419, 424 [86 Cal.Rptr. 623].

[9]This four-year cut-off came about according to counsel at oral argument because he slavishly followed the successful complaint in *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732]. Counsel overlooked the point that the four-year period of limitation runs not from the making of a written agreement, but from its breach (see 2 Witkin, Cal. Procedure (2d ed. 1970) pp. 1199-1200).

[10]"The fact that plaintiffs' definition of the class is not acceptable does not require dismissal of the class allegations. . . . [C]ourts should employ the full measure of the discretion granted by [Federal Rule of Civil Procedure, rule 23], whenever a fair reading of the complaint permits, to define classes . . . in a manner that will permit utilization of the class action procedure." (*Dolgow* v. *Anderson* (E.D.N.Y. 1968) 43 F.R.D. 472, 492.)

pleading;[11] for us now to plant ourselves upon this error as a ground for affirmance of the superior court's order dismissing the action would in effect be to deny plaintiff the opportunity to correct the defect by amendment. ▇ When a trial court sustains a demurrer without leave to amend, we hold such a ruling an abuse of discretion if there is a reasonable possibility that the defect can be cured by amendment, as it can be here. (*Lemoge Electric* v. *County of San Mateo* (1956) 46 Cal.2d 659, 664 [297 P.2d 638]; *Wennerholm* v. *Stanford Univ. Sch. of Med.* (1942) 20 Cal.2d 713, 719 [128 P.2d 522, 141 A.L.R. 1358].) ▇ We therefore reject defendants' contention that plaintiffs' misdefinition of the class constitutes grounds for affirmance of the judgment. Our determination, of course, does not bar defendants from demurring in the superior court to the present complaint on the ground of plaintiffs' nonmembership in the class there described.

(b) *Plaintiffs' reliance upon the contention that American's trust deeds are contracts of adhesion does not preclude the maintenance of this suit as a class action.*

Defendants contend that the present case is not a proper class action because the plaintiffs lack the requisite community of interest. (See *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 704 [63 Cal.Rptr. 724, 433 P.2d 732].) In our recent decision in *Vasquez* v. *Superior Court* (1971) 4 Cal. 3d 800, 820-821 [94 Cal.Rptr. 796, 484 P.2d 964] we suggested that any such issue as to whether a suit should be continued as a class action should be determined by the trial court after notice and hearing, and recommended the procedures set forth in Civil Code section 1781 and federal rule 23. The trial court here has not held any such hearing, nor has it ruled on the issue of the class action. Defendants' contention before this court that the present case is not a proper class action, thus raises only the narrow issue whether this suit as a matter of law lacks sufficient community of interest to sustain a class action.

Defendants begin their contention by noting the plaintiffs claim that American's trust deeds are contracts of adhesion. They then assert that issues as to a contract of adhesion are inappropriate to a class action, and suggest that plaintiffs' continued assertion of this claim demonstrates that the validity and enforceability of the trust deeds should not be adjudicated on a class basis.

---

[11]Cf. *Cal. Gas. Retailers* v. *Regal Petroleum Corp.* (1958) 50 Cal.2d 844 [330 P.2d 778]. In this case the original plaintiffs, who were not members of the class, moved to amend to add one Phillip Hudson, a member, as a representative plaintiff. The trial court granted the amendment, and we affirmed, stating that "The amendment to the complaint and the inclusion of Hudson as a party plaintiff have the effect of curing the original defective pleading." (50 Cal.2d at pp. 850-851.)

■ Controversies involving widely used contracts of adhesion present ideal cases for class adjudication; the contracts are uniform, the same principles of interpretation apply to each contract, and all members of the class will share a common interest in the interpretation of an agreement to which each is a party. Defendants assert, however, that to establish the trust deed as a contract of adhesion plaintiffs must present individualized evidence showing the relative bargaining power of each borrower vis-a-vis American, the alternatives available to each borrower, and their knowledge of such alternatives.

■ Defendants err in their assumption that proof of the adhesive character of the trust deed would necessarily require the individual testimony of each borrower. The terms of the trust deeds used by American and its competitors are matters of public record. Through the testimony of American's own officers plaintiffs may be able to prove American's bargaining policy and prowess relative to its borrowers. If that evidence discloses that the trust deed is adhesive as to virtually all members of the class, plaintiffs will not need to elicit individual testimony from each borrower.[12]

We conclude that plaintiffs' claim that the trust deeds are adhesive does not render their suit per se unfit for class litigation. Whether in fact this claim will inject into the case such individualized issues and evidence as to overcome the common issues of fact and law, and preclude the continued use of a class action format, is a matter which we cannot resolve on the present record, and must await determination by the trial court.

(c) *Although American's due-on-encumbrance clause is not per se an illegal restraint upon alienation, the enforcement of that clause unlawfully restrains alienation whenever the borrower's execution of a junior encumbrance does not endanger the lender's security.*

Defendants finally contend that American's due-on-encumbrance clause is valid as a matter of law, and that a declaration by this court to that effect would serve in practical effect as a declaratory judgment in the class action and thus obviate the need for further proceedings. (See *Fairchild* v. *Bank of America* (1961) 192 Cal.App.2d 252, 261-262 [13 Cal.Rptr. 491].)

---

[12]Our opinion in *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800 [94 Cal.Rptr. 796, 484 P.2d 964], provides a useful analogy. In that case, a group of consumers brought a class action for misrepresentation. Defendant alleged that a class action would not lie because each plaintiff would have to present separate proof of the fact of the representation. Plaintiffs, however, asserted that each salesman recited a memorized, uniform narrative. We then concluded that "If plaintiffs can prove their allegations at the trial, an inference that the representations were made to each class member would arise, in which case it would be unnecessary to elicit the testimony of each plaintiff as to whether the representations were in fact made to him." (4 Cal.3d at p. 812.)

We conclude, however, that whether the enforcement of the due-on-encumbrance clause unlawfully restrains alienation turns upon whether such enforcement is reasonably necessary to protect the lender's security—an issue which cannot be resolved merely by examination of the pleadings and declarations now before us.

We initially summarize the California law on restraints on alienation. Civil Code section 711 states simply that "Conditions restraining alienation, when repugnant to the interest created, are void." Until 1964, California courts interpreted this provision as invalidating not only absolute restraints on alienation, but also restraints partial as to persons or duration.[13] Most other states had, by statute or court decision, adopted a similar position; Kentucky alone upheld a minority view approving restraints of reasonable duration.[14]

Our decision in *Coast Bank* v. *Minderhout* (1964) 61 Cal.2d 311 [38 Cal.Rptr. 505, 392 P.2d 265], represented a radical break with the common law tradition. (Comment (1965) 12 U.C.L.A. L.Rev. 954, 961.) In *Coast Bank* the bank sought to enforce an agreement which provided that the borrower "will not, without the consent in writing of Bank . . . create or permit any lien or other encumbrances (other than those presently existing and/or securing the payment of loans and advances made to them by Bank) to exist on said real property, and will not transfer, sell, hypothecate, assign, or in any manner whatever dispose of said real property, or any interest therein . . . ." The agreement further provided that upon default the bank at its election, could accelerate the debt. The borrowers sold the property without the bank's consent. The bank elected to accelerate and brought an action to foreclose; defendants demurred, alleging that the provision was a restraint on alienation.

Our opinion explained that prior cases had stated that any restraint on alienation was invalid; we noted that this absolutist position succumbed to the criticism "that it loses sight of the purposes of the rule and needlessly invalidates reasonable restraints designed to protect justifiable interests of the parties." (61 Cal.2d at p. 316.) We observed also that statutes or judicial decisions had upheld reasonable restraints upon spendthrift trusts,

---

[13] See *Los Angeles Inv. Co.* v. *Gary* (1919) 181 Cal. 680, 682 [186 P. 596, 9 A.L.R. 115]; *Title Guarantee & Trust Co.* v. *Garrott* (1919) 42 Cal.App. 152, 158 [183 P. 470].

[14] See Bernhard, *The Minority Doctrine Concerning Direct Restraints on Alienation* (1959) 57 Mich.L.Rev. 1173, 1174-1177; Manning, *The Development of Restraints on Alienation Since Gray* (1935) 48 Harv.L.Rev. 373; Comment (1965) 12 U.C.L.A. L.Rev. 954, 955-956; Annot. (1955) 42 A.L.R.2d 1243; Annot. (1954) 36 A.L.R.2d 1437.

assignments of leases, life estates, corporate shares, and executory land contracts. Resolving that only unreasonable restraints on alienation were invalid, we concluded that "In the present case it was not unreasonable for plaintiff to condition its continued extension of credit to [borrowers] on their retaining their interest in the property that stood as security for the debt. Accordingly, plaintiff validly provided that it might accelerate the due date if the [borrowers] encumbered or transferred the property." (61 Cal.2d at p. 317.)

Following *Coast Bank,* three published Court of Appeal decisions have held that due-on-sale clauses in trust deeds do not constitute unlawful restraints on alienation. (*Jones* v. *Sacramento Sav. & Loan Assn.* (1967) 248 Cal.App.2d 522, 527, fn. 3 [56 Cal.Rptr. 741]; *Hellbaum* v. *Lytton Sav. & Loan Assn.* (1969) 274 Cal.App.2d 456, 458 [79 Cal.Rptr. 9]; *Cherry* v. *Home Sav. & Loan Assn.* (1969) 276 Cal.App.2d 574, 578-579 [81 Cal.Rptr. 135].) Although *Hellbaum* and *Cherry* assert that due-on-encumbrance provisions are also valid, none of the Court of Appeal opinions set forth trust deeds which expressly restricted future encumbrances,[15] and in each case the act triggering acceleration was a sale, not an encumbering, of the subject property.

Thus, although California cases have clearly held a due-on-sale clause valid, the language in such cases respecting due-on-encumbrance provisions is, as plaintiffs point out, entirely dictum. We must now inquire into the basis upon which the cases have approved the due-on-sale clause to determine whether those reasons apply in full measure to restraints against future encumbrances.

*Coast Bank,* as we have seen, spoke of the borrowers "retaining their interest in the property that stood as security for the debt." (61 Cal.2d at p. 317.) *Hellbaum,* in similar language, noted the creditor's interest "in maintaining the direct responsibility of the parties on whose credit the loan was made." (274 Cal.App.2d 456, 458.) *Cherry* v. *Home Sav. & Loan Assn.* discusses this reasoning in greater detail: "Lenders run the risk that security may depreciate in value, or be totally destroyed. This risk of loss is reduced in the lender's viewpoint if the borrower is known to be conscientious, experienced and able. . . . If a borrower were able to sell the security without concern for the debt, he may take the proceeds

---

[15]The trustee deeds in *Jones* and *Cherry* provided for acceleration if the borrower "shall sell, convey or alienate said property, or . . . any interest therein." It is open to question whether such provisions permit acceleration upon the making of a junior encumbrance. (See Cal. Real Estate Secured Transactions (Cont.Ed.Bar 1970) § 4.65.) The opinion in *Hellbaum* does not quote the precise wording of the acceleration clause.

of the sale, leaving for parts unknown, and the new owner of the property might permit it to run down and depreciate." (276 Cal.App.2d at pp. 578-579.)[16]

The reasoning of these cases, while justifying enforcement of due-on-sale provisions clearly does not apply with equal force to restraints against future encumbrances. A sale of the property usually divests the vendor of any interest in that property, and involves the transfer of possession, with responsibility for maintenance and upkeep, to the vendee. A junior encumbrance, on the other hand, does not terminate the borrower's interests in the property, and rarely involves a transfer of possession. A junior lien does, of course, create a possibility of future foreclosure and thus of future transfer of possession. But the risk of future foreclosure—a risk which reaches fruition in only a minority of cases—cannot justify an endowment to a lender of an uncontrolled discretion to accelerate upon the making of a junior encumbrance. A right to accelerate when foreclosure occurs, or looms imminent, would fully protect the lender.[17]

---

[16]Hetland, *Real Property and Real Property Security: the Well-being of the Law* (1965) 53 Cal.L.Rev. 151, explaining the *Coast Bank* opinion, states at page 170 that "As is true with fire insurers, the lender must be given a choice of borrowers to guard against the moral risks, here usually waste or poor credit which increase the likelihood of having to retake the property." (See also Cal. Real Estate Secured Transactions (Cont.Ed.Bar 1970) § 4.56; comment (1962) 35 So.Cal.L.Rev. 475, 481.)

[17]Defendants suggest that restraints against sales or encumbrances are necessary to enable the lender to maintain its lending portfolio at the current market rate of interest. They quote *Cherry* v. *Home Sav. & Loan Assn.* (1969) 276 Cal.App.2d 574, 579 [81 Cal.Rptr. 135]: "When interest rates are high, a lender runs the risk they will drop and that the borrower will refinance his debt elsewhere at a lower rate and pay off the loan, leaving the lender with money to loan but at a less favorable interest rate. On the other hand, when money is loaned at low interest, the lender risks losing the benefit of a later increase in rates. As one protection against the foregoing contingency, a due-on-sale clause is employed permitting acceleration of the due date by the lender so that he may take advantage of rising interest rates in the event his borrower transfers the security."

This argument may be appealing as applied to a *sale* of the property. The borrower in such sales generally receives cash sufficient to pay off his obligation. To permit the lender to accelerate ensures that all buyers of property must finance at the current interest rate, and that none obtain an advantage because of the fortuitous fact that his seller originally purchased during a period of low interest. Acceleration upon sale of the property, in other words, does not seriously restrict alienation because the sale terms can, and usually will, provide for payment of the prior trust deed.

A junior encumbrance, on the other hand, often represents only a small fraction of the borrower's equity in the property; it does not often provide the borrower with the means to discharge the balance secured by the trust deed. Thus under a due-on-encumbrance clause the borrower is exposed to a detriment quite different than that involved in a sale. He is restrained from executing any junior encumbrance unless he is willing to accede to lender's demand for current interest rates not merely upon the sum secured by the second lien, but also upon the balance due under the first trust deed, which is ordinarily a far greater amount.

In any event, a restraint on alienation cannot be found reasonable merely because it

Defendants argue that whenever a borrower takes out a second lien, his very conduct demonstrates that he has become financially irresponsible or at least a poor credit risk. Such an assertion, however, is an overgeneralization, a proposition true of some borrowers but not of others. Moreover, American does not claim a right to accelerate merely upon learning that the borrower has encountered economic adversity. In light of these considerations we find no justification in American's arbitrary seizure of the making of a second lien, a fact not necessarily indicative of declining credit ability, as a basis for acceleration.

We recognize, however, as defendants point out, that instances may occur when the institution of a second lien does endanger the security of the first lien. In some cases the giving of a possessory security interest, e.g., a conveyance to a mortgagee in possession, would pose the same dangers of waste and depreciation as would an outright sale. In other cases a second lien may be employed as a guise to effect a sale of the property. In still others a bona fide second loan may still leave the borrower with little or no equity in the property.

We conclude, then, in instances in which the borrower's subsequent conduct endangers the lender's security, the enforcement of the due-on-encumbrance clause may be reasonably necessary to protect the lender's interests. In many other instances, however, the clause serves no such purpose. In fact, American itself recognizes that enforcement of such a provision cannot invariably be sustained as reasonably necessary to protect the primary security. When a borrower takes out a secondary loan American itself maintains that it does not elect automatically to accelerate, but examines the circumstances of the transaction. If its security is safe, American states that it then waives its right to accelerate, as it eventually did for both La Salas and Iford.

Yet defendants claim, in essence, that the lender should retain an *absolute* discretion to determine whether the transaction calls for enforcement of the due-on-encumbrance clause. Such an uncontrolled power, however, creates too serious a potential of abuse. Even when the lender's security has not been exposed to danger, the lender, by threatening to accelerate, could compel the borrower to pay a fee or give other valuable consideration for the waiver. The Attorney General, as amicus curiae, charges that as a matter of practice American requires waiver fees whenever a borrower makes a junior encumbrance. Defendants deny this charge yet seek from us a declaration that a lender enjoys an unconditional right

---

is commercially beneficial to the restrainor. Otherwise one could justify any restraint on alienation upon the ground that the lender could exact a valuable consideration in return for its waiver, and that sensible lenders find such devices profitable.

to enforce the due-on-encumbrance clause and, as a necessary corrolary the unconditional right to obtain from a borrower whatever consideration it can exact for the waiver, however inequitable such exaction may be.

In view of these factors we cannot rule upon the validity of a due-on-encumbrance clause in the abstract. Indeed, we note that it is not so much that clause itself as the lender's application of it that will effect an invalid restraint on the alienation of property. ▮▮▮ In those few instances previously discussed, in which the enforcement of that provision is reasonably necessary to avert danger to the lender's security, the restraint on alienation remains lawful under the principles established in *Coast Bank* v. *Minderhout* (1964) 61 Cal.2d 311, 317 [38 Cal.Rptr. 505, 392 P.2d 265]. When such enforcement is not reasonably necessary to protect the security, the lender's use of the clause to exact collateral benefits must be held an unlawful restraint on alienation. (See Note (1971) 22 Hastings L.J. 431, 440-441; Comment (1962) 35 So.Cal.L.Rev. 475, 487.)

The circumstances of American's enforcement of the due-on-encumbrance clause against the plaintiffs, who sue as a class, are not before us on this appeal. We do not know in which instances the execution of the secondary loan signaled an imminent transfer of possession to the junior lender, in which cases the making of the junior encumbrance overencumbered the property, or what other circumstances might have led American to believe its security was in danger; neither do we know whether in fact American exercises its right to accelerate under that clause only when its security is impaired. We therefore do not render a declaration fixing the rights of the parties respecting the enforcement of the due-on-encumbrance clause; such relief must await a trial on the merits in the superior court.

Our determination in this opinion that a due-on-encumbrance clause may be enforced only when necessary to protect the lender's security, however, does raise doubts as to whether it is desirable to continue this litigation in its class format. In the trial court, defendants had contended that American's due-on-encumbrance clause was valid on its face and could be enforced in the discretion of the lender, thus posing an important issue of law common to all members of plaintiff class. We have, however, determined that the clause may be enforced only when required to protect American's security. Anticipating this holding, defendants now argue that the need to inquire into the circumstances of American's enforcement, or threatened enforcement, of this clause against each borrower creates individual issues which far predominate over any remaining common issues.

As we have noted, we lack the requisite information as to the proportion of cases in which enforcement was clearly needed to protect the lender's security, those in which it plainly served no such purpose and those in which the matter will be in dispute. Nor do we know whether each class member must be considered individually, or whether they can be aggregated into a few subclasses sharing most issues of law and fact in common. Our lack of knowledge of such relevant data primarily results from the fact that the trial court has not held a hearing on the matter of continuing this case as a class action, and the parties have not submitted declarations on that issue.

We therefore conclude that any attempt on our part to determine whether individual or common issues will predominate in the future course of this litigation would be premature. Plaintiffs may wish to redefine the class they seek to represent. The parties, or the court, may find it feasible to subdivide the class into subclasses sharing common characteristics. In many instances the parties may be able to agree as to the propriety of enforcement of the due-on-encumbrance clause. Finally, when, and if, it becomes necessary for the trial court to determine whether this suit should be continued as a class action, that court can have the assistance, which we lack, of declarations by the parties directed to that specific issue and prepared in the light of the principles set forth in this opinion.

### 4. Conclusion

The specific issue raised by this appeal is whether the superior court erred in dismissing the action on behalf of the class, without notice to its members, upon the ground that the named plaintiffs were no longer qualified to represent the class. We have concluded that the court did err and that its judgment dismissing the action on behalf of the class must be reversed. Our recent cases have recognized that the suit on behalf of the class is a valuable medium of litigation; we have accorded it a flexible, if careful, application. Defendants have also urged that we affirm the dismissal for numerous reasons besides that considered by the superior court; we have examined each such reason and found it insufficient to justify affirmance of the judgment.

Following our ruling upholding reasonable restraints on alienation, we have distinguished the due-on-sale from the due-on-encumbrance clauses; we have concluded that the lender may insist upon the automatic performance of the due-on-sale clause because such a provision is necessary to the lender's security. We have decided, however, that the power lodged in the lender by the due-on-encumbrance clause can claim no such mechanical

justification. We sustain it only in the case of a trial court's finding that it is reasonably necessary to the protection of the lender's security; to repose an absolute power in the creditor to enforce the clause under any and all circumstances could lead to an abusive application of it and in some cases an arbitrary exaction of a *quid pro quo* from debtors.

The judgment of the superior court dismissing the action on behalf of the class is reversed, and the cause remanded to that court for further proceedings in accord with the views expressed in this opinion.

Wright, C. J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

**McCOMB, J.**—I dissent. I would affirm the judgment for the reasons expressed by Mr. Justice Thompson in the opinion prepared by him for the Court of Appeal in *La Sala* v. *American Sav. & Loan Assn.* (Cal.App.) 91 Cal.Rptr. 238.