[Civ. No. 50488. Second Dist., Div. One. Nov. 18, 1977.]

SALTON CITY AREA PROPERTY OWNERS ASSOCIATION,
Plaintiff and Appellant, v.
M. PENN PHILLIPS CO., Defendant and Respondent.

**COUNSEL**

Don Boehme and Robert A. Adelman for Plaintiff and Appellant.

Meserve, Mumper & Hughes and L. Allan Songstad, Jr., for Defendant and Respondent.

## OPINION

LILLIE, J.—The Salton City Area Property Owners Association (Association) brought suit as representative of its members for damages or rescission and restitution of land sale contracts against a number of defendants. Defendant M. Penn Phillips Co. (Phillips) demurred on the ground that the Association has no standing to sue. The demurrer was sustained on this ground; the Association failed to amend, and the complaint was dismissed as to the demurring defendant. Plaintiff appeals from the order of dismissal.

According to the complaint, plaintiff Association is a nonprofit unincorporated association consisting of approximately 2,190 persons who entered into contracts with the various defendants to purchase land in the Salton City area; it alleged its authorization to bring suit on behalf of its members in a representative capacity. Generally speaking the complaint alleged a classic landsale fraud operation. A veritable catalogue of alleged misrepresentations, stated to be part of a "canned sales pitch" made to all purchasers, is presented; and it is alleged that defendants knew these misrepresentations to be such, and that the members of the Association reasonably relied thereon to their detriment. There is no allegation that the Association itself had any contractual relationship with or suffered damages from the alleged activities of the defendants. In the first cause of action the Association sought damages, estimated to run into millions of dollars, rescission and restitution, and exemplary damages in the sum of $100 million. The second cause of action restates the first and adds the offer of the Association's members to restore the real property they purchased in return for principal and interest paid, and the prayer is for rescission and restitution.

The Association asserts solely that it has standing to sue as representative of its membership, relying primarily on *Residents of Beverly Glen, Inc.* v. *City of Los Angeles* (1973) 34 Cal.App.3d 117 [109 Cal.Rptr. 724]. In *Residents of Beverly Glen, Inc.,* plaintiff was a nonprofit civic corporation the membership of which were residents in the area of Beverly Glen, a natural major valley traversing the Santa Monica mountains with only a single through traffic artery, Beverly Glen Boulevard. The suit sought declaratory relief and a writ of mandate to have set aside a conditional use permit granted by the City of Los Angeles to a developer and to have a section of the Los Angeles Municipal Code declared unconstitutional. It was alleged that the

developer's project would increase population density beyond that permitted in the city's Santa Monica Mountain master plan, and that Beverly Glen Boulevard was already inadequate to handle existing traffic and any widening of this thoroughfare would destroy the existing residential community of plaintiff's members because it would require removal of their homes. Plaintiff corporation owned no real property in the area and paid no taxes in Los Angeles County, and therefore there was no injury to it as opposed to its membership.

Reversing summary judgment, this court held that plaintiff did have standing to sue. Certain earlier cases were distinguished on the ground that plaintiff had alleged that its members lived in the affected area and would suffer injury from the proposed development said to be unlawful. It was then noted that environmental concerns underlay the action and that in recent years there has been a marked accommodation of formerly strict procedural requirements of standing to sue, and even capacity to sue, where matters relating to the "social and economic realities of the present day organization of society" are concerned. Cases illustrating this perception were reviewed. It was then stressed that a plaintiff's standing to sue as a representative should be considered in terms of the particular plaintiff's ability to fairly protect the rights of the group he purports to represent. Finally to be considered was the public nature of the question involved; we quoted *Bd. of Soc. Welfare* v. *County of L.A.* (1945) 27 Cal.2d 98, 100-101 [162 P.2d 627]: " '[W]here the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced. . . .' "

Respondent invokes the general rule that an action must be prosecuted in the name of the real party in interest (Code Civ. Proc., § 367), and distinguishes *Residents of Beverly Glen, Inc.* on the grounds (1) that it was a "public interest" type case and (2) the action sought only prospective relief not damages.[1] *Residents of Beverly Glen, Inc.* and the

---

[1]Respondents also relies heavily on *Friendly Village Community Assn., Inc.* v. *Silva & Hill Constr. Co.* (1973) 31 Cal.App.3d 220 [107 Cal.Rptr. 123, 69 A.L.R.3d 1142] wherein a nonprofit corporation charged with maintaining the common areas of a condominium was held to have no standing to sue for damages to these areas because the cost of repair was passed on to the condominium owners who were thus the only parties who would be benefited or injured by the judgment, i.e., the real parties in interest. It seems clear, however, that this case is irrelevant as it was not a representative action. Of somewhat

other authorities cited by appellant do satisfy this characterization, e.g., *Sierra Club* v. *Morton* (1972) 405 U.S. 727 [31 L.Ed.2d 636, 92 S.Ct. 1361], or one close to it in the case of labor unions, e.g., *Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276 [32 Cal.Rptr. 830, 384 P.2d 158], or professional associations, e.g., *Santa Clara County Contractors etc. Assn.* v. *City of Santa Clara* (1965) 232 Cal.App.2d 564 [43 Cal.Rptr. 86]. Indeed, appellant has cited no case in which an association has been held to have standing to sue in a pure representative capacity for damages to its members.

In *Warth* v. *Seldin* (1975) 422 U.S. 490 [45 L.Ed.2d 343, 95 S.Ct. 2197], the United States Supreme Court essentially endorsed respondent's position. The court held that an association of home builders had no standing to sue for damages on behalf of its members where the association itself had not been injured. However, in *Warth* it was clear that neither a pure representative action nor a class action was appropriate. As the court observed: "[T]he damages claims are not common to the entire membership, nor shared by all in equal degree. To the contrary, whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." (422 U.S. at pp. 515-516 [45 L.Ed.2d at pp. 364-365].) In the instant case the complaint alleges that the entire membership of the Association were victims of a systematic fraud. Only the extent of injury to each member would require individualized proof, a fact insufficient in itself to bar *class treatment* of the action. (*Vasquez* v. *Superior Court*, 4 Cal.3d 800, 815 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].) Notwithstanding the Association's disclaimer of interest in class action status, we look to the essential nature of the within action and find it to be a class action on behalf of a self-defined class. (Cf. *Residents of Beverly Glen, Inc.* v. *City of Los Angeles*, 34 Cal.App.3d 117, 128 [109 Cal.Rptr. 724].) So viewed it is apparent that the Association's complaint is sufficient as against a general demurrer.

---

more interest than the case itself is the Legislature's apparent reaction to it. Code of Civil Procedure section 367 was amended to make new section 374 an exception to the real party in interest rule. (Stats. 1976, ch. 595, § 1.) Section 374 (added *id.* § 2) reads: "An owners' association established in a project consisting of condominiums, as defined in Section 783 of the Civil Code, or of a community apartment project, as defined in Section 11004 of the Business and Professions Code, or an undivided interest subdivision project, as defined in Section 11000.1 of the Business and Professions Code, *shall have standing to sue as the real party in interest for any damages to the commonly owned lots, parcels or areas* occasioned by the acts or omissions of others, without joining with it the individual owners of such project." (Italics added.)

 Code of Civil Procedure section 382 provides, in relevant part, that "[W]hen the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." The statutory authorization for representative or class suits is based on the doctrine of virtual representation and is an exception to the general rule of compulsory joinder of all interested parties. (*Parker* v. *Bowron*, 40 Cal.2d 344, 352 [254 P.2d 6].) The doctrine of virtual representation rests on considerations of necessity and paramount convenience and was adopted to prevent a failure of justice. (*Chance* v. *Superior Court*, 58 Cal.2d 275, 291 [23 Cal.Rptr. 761, 373 P.2d 849].) On whichever alternative of the statutory conditions the action is brought two requirements must be satisfied; there must be an ascertainable class and a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. (*Daar* v. *Yellow Cab Co.*, 67 Cal.2d 695, 704 [63 Cal.Rptr. 724, 433 P.2d 732].)

 In the instant case the class on behalf of which the action is brought is readily ascertainable—it is the membership of the Association. Admittedly this manner of defining a class is somewhat unorthodox. Typically a class action is brought on behalf of all persons similarly situated within a described geographical and time frame. But it can hardly make much difference to a defendant that a class is defined more narrowly than it might be. While a single action in which all potential plaintiffs are represented may prove more convenient to a defendant than a multitude of individual actions or a series of actions by limited classes, benefit to the defendant is incidental, not the purpose of class action procedure.[2] Class members are never forcibly represented in the action; that they may opt out always means there may be more than one action on the same factual and legal premises. Whether the class is self-defined, as here, or descriptively defined as "all persons who . . . ," several actions may be brought; a defendant in either case may if feasible avail himself of procedures for consolidation or coordination of actions. Moreover, definition of the class as the members of the Association has a significant advantage over the standard class definition —all class members are readily identifiable. Thus, defendant's discovery opportunities are improved, the number of names of those who would share in any recovery are certain and the res judicata effect of judgment

---

[2]"A defendant who in one way or another victimizes hundreds of thousands, has, after all, no constitutional right to be subjected to only one lawsuit." (*Cartt* v. *Superior Court*, 50 Cal.App.3d 960, 968 [124 Cal.Rptr. 376].)

is not left to later determination. Besides, it would seem that the manageability of the action is greatly enhanced.

The commonality of the critical questions of law and fact involved in the action, the community of interest, is adequately set forth in the complaint. Generally speaking, it alleges the use of a fraudulent canned sales pitch which was designed to and did induce the members of the Association to purchase property in the Salton City area. (Cf. *Vasquez* v. *Superior Court*, 4 Cal.3d 800 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].) It may be argued, however, that whatever the community of interest among the Association's members, the Association does not share in the community of interest. This is another way of framing the rule that a purported class representative must be a member of the class he seeks to represent (see *Parker* v. *Bowron*, 40 Cal.2d 344, 352-353 [254 P.2d 6]), a rule invoked on several occasions to bar an organization from bringing suit on behalf of its members. (E.g., *Greater Westchester Homeowners Assn., Inc.* v. *City of Los Angeles*, 13 Cal.App.3d 523, 526 [91 Cal.Rptr. 720]; *Los Angeles Fire & Police Protective League* v. *Rodgers*, 7 Cal.App.3d 419, 423-424 [86 Cal.Rptr. 623].) On the other hand there are the cases like *Residents of Beverly Glen, Inc.* in which this nominal rule was no impediment to the standing of an organization suing on behalf of its members. Undoubtedly this is because in the latter category the purpose of the rule, though perhaps not its literal terms, was satisfied. The primary purpose of the rule is to assure that one representing the interests of others will adequately and fairly do so. (See, e.g., *Trotsky* v. *Los Angeles Fed. Sav. & Loan Assn.*, 48 Cal.App.3d 134, 146 [121 Cal.Rptr. 637]; *Petherbridge* v. *Altadena Fed. Sav. & Loan Assn.*, 37 Cal.App.3d 193, 200-201 [112 Cal.Rptr. 144].) The presumption that one not a member of the represented class cannot adequately and fairly represent its interests cannot apply with full force to an association seeking to represent its membership; it imports an artificial distinction between the association and its members. One presumes that an association is typically the embodiment of a community of interest, the form assumed by some conglomerative principle or goal. True, there are often instances in which, as a result of a divergence of views among the members, the association qua entity no longer is fully representative of the interests of its members, or all of them. Yet where, as here, the membership is united in a desire to redress alleged grievances common to all, it is disingenuous to attempt a severance of the interests of the association from those of its members. Whether the Association can fairly and adequately represent the interests of its members in this action

is a question to be determined in the first instance by the trial court. (*La Sala* v. *American Sav. & Loan Assn.*, 5 Cal.3d 864, 871 [97 Cal.Rptr. 849, 489 P.2d 1113].) We stress, however, that it is this question, and not simply whether the Association is a member of the represented class that must be decided.

█ It may be true, as the Association says, that while every class action is a representative action the converse is not the case. In either instance, however, justification for the procedural device whereby one may sue for the benefit of many rests on considerations of necessity, convenience, and justice. That being so, it is clear that in the instant case the Association is in the position of having to show the desirability of proceeding in the manner it has chosen, just as in the ordinary class action suit. We note one peculiarity of procedure. Generally in a class action suit seeking damages the class representative is obliged to give notice to the class. Here it is arguable that the Association's alleged authorization of its members to prosecute the action is a more than adequate substitute for the ordinary notice requirement. However, the trial court need not and should not take the Association at its word in this respect. The benefits attending the prosecution of the action on behalf of a self-defined class disappear if the Association's membership is not really acting in the bringing of the suit. The nature and scope of the Association's authorization to sue is an issue critical to the trial court's determination whether the action should be permitted to proceed in its present format. As for the other procedural aspects of the action, we need say only that the trial court is vested with ample authority to decide to what extent, if any, ordinary class action requirements should be modified to suit the case.[3]

The order of dismissal is reversed and the cause remanded with directions to the superior court to vacate said order of dismissal and overrule Phillips' demurrer. Each party to bear its own costs.

Wood, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied December 16, 1977, and respondent's petition for a hearing by the Supreme Court was denied January 19, 1978. Clark, J., was of the opinion that the petition should be granted.

---

[3] "California courts must fashion 'pragmatic procedural devices' (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 820) to handle class actions within the framework of the relevant statutes." (*Southern California Edison Co.* v. *Superior Court,* 7 Cal.3d 832, 843 [103 Cal.Rptr. 709, 500 P.2d 621].)