[Civ. No. 32033. Second Dist., Div. Five. Feb. 15, 1968.]

ALPINE MUTUAL WATER COMPANY et al., Petitioners, v. THE SUPERIOR COURT OF VENTURA COUNTY, Respondent; SUSANA KNOLLS MUTUAL WATER COMPANY et al., Real Parties in Interest.

Lyders & McKaskle and K. D. Lyders for Petitioner.

No appearance for Respondent.

Schumacher & Hale and Frederick R. Schumacher for Real Parties in Interest.

THE COURT.—This proceeding arises out of an action now pending in the Superior Court for Ventura County, between Alpine Mutual Water Company and others, the petitioners here, as plaintiffs, against Susana Knolls Mutual Water Company, William M. Fisher and Frederick R. Schumacher as defendants. On June 27, 1967, the court made an order requiring plaintiffs to answer an interrogatory consisting of several parts. Plaintiffs petition this court for a writ prohibiting the enforcement of that order.

Plaintiffs' initial pleading is denominated "Complaint for Declaratory and Other Relief." In it plaintiffs Alpine Mutual Water Company (hereafter referred to as Alpine) and Douglas Morton allege a "first cause of action" and a "second cause of action" against the several defendants. These are followed by similar causes of action by the plaintiffs Belwood Mutual Water Company (hereafter referred to as

Belwood) and John F. Roberts against the same defendants.[1] The parties are agreed that the interrogatory relates only to the two second causes of action.

The second cause of action in Alpine's case alleges facts to support the claim that the individual defendants, purportedly acting as officers of Alpine, on October 21, 1966, recorded an invalid assessment and lien against all of the houses and lots to which the shares of Alpine were appurtenant in Ventura County. Morton alleged that he represented himself and all other stockholders of Alpine whose titles have been clouded by the invalid lien. Alpine and Morton sought a declaration of the invalidity of the lien. As part of the same cause of action, facts appropriate to the statement of a cause of action for slander of title are alleged and the plaintiffs allege that the theretofore described property subjected to the lien ''has been damaged and the market value thereof has been diminished by the lien . . . in the amount of $1,000.00 per house and lot, or a total of $395,000.'' On information and belief plaintiffs further alleged that ''the property of many of the shareholders of ALPINE has been damaged by the lien described . . . above . . . in various amounts in excess of $1,000.00 per house and lot, and plaintiffs will amend this complaint to show such actual damages at such time as the amounts thereof have been ascertained.'' As part of the relief in the prayer, Morton, on his own behalf and on behalf of all other shareholders of Alpine, sought $395,000 for diminution of the value of their property; ''Such actual damages in excess of $1,000.00 per house and lot as may be shown to have been suffered by the various shareholders of ALPINE''; reasonable attorneys' fees and court costs incurred by plaintiffs to remove the cloud from the property; and exemplary damages in the sum of $100,000.

The second cause of action, brought by Belwood and Roberts, contains allegations similar to those in the Alpine-Morton action except that the invalid lien was recorded by the individual defendants, purportedly on behalf of Belwood, affecting the real property to which the Belwood shares were appurtenant. The damage averments are identical to those previously recited in respect of the Morton claim, excepting that the total amount of damages computed on the basis of

---

[1]By their first cause of action Alpine and Morton seek a judgment declaring the rights of the parties with respect to certain contracts and deeds by which the water lines and appurtenances of Alpine were transferred to defendant Susana Knolls Mutual Water Company.

$1,000 per house and lot was $775,000. Except for the difference in the total damages sought, the prayer is the same as that previously described.

The following facts are taken from the complaint: Alpine and Belwood are mutual water companies serving a total of 1,170 residential stockholders in the Simi Valley. Plaintiff Morton is a shareholder of Alpine. Plaintiff Roberts is a shareholder of Belwood. Both companies obtain their water by purchase from defendant Susana Knolls Mutual Water Company (hereafter referred to as Susana Knolls). For several years before the start of this litigation Susana Knolls loaned substantial sums of money to the two companies to defray the costs of their operations. In May 1960, the directors of the two companies adopted identical resolutions instructing their respective officers to cause assessments to be made against their shares and shareholders as soon after the close of their fiscal years on September 30, 1966, as the amounts of the indebtedness could be ascertained. On October 18, 1966, the indebtedness of Alpine was found to be $86,381.13, and that of Belwood, $81,791.67. On that day defendant Fisher, as president of both companies, and defendant Schumacher as their secretary, executed separate documents entitled ''Declaration of Assessment and Lien'' by which it was declared that ''An assessment is hereby levied, and a lien recorded'' in favor of Alpine and Belwood respectively, by order of their respective board of directors in stated amounts upon and against each of the outstanding shares of each corporation ''and each and every house and lot to which each such share is appurtenant.'' On October 20 the same officers of Alpine and Belwood executed separate documents entitled ''Assignment of Assessment and Lien,'' by which Alpine and Belwood assigned to Susana Knolls all their respective rights in and to the assessments levied upon their shareholders in the aggregate amount of their respective indebtednesses to Susana Knolls, together with the prorated amounts of the individual assessments and liens impressed upon each house and lot to which the shares of stock were appurtenant, all as evidenced by the declarations of assessments and liens referred to above. Each of these declarations and each of the assignments was recorded in the office of the County Recorder of Ventura County on October 21. On the next day, October 22, the defendants Fisher and Schumacher were removed as officers and directors of Alpine and Belwood, and on November 15 the complaint in the present actions was filed.

Since the two second causes of action, including the relief sought, are the same except for the identity of the plaintiffs, and the number of shares and the legal description of the lots to which they are appurtenant, we confine our further analysis of the case to the second cause of action of Alpine and Morton. The subject of that cause of action is the real property consisting of the houses and lots owned by Alpine's shareholders to which its 395 shares are appurtenant.[2]

Defendant Susana Knolls (the assignee of Alpine and Belwood, respectively) demurred to the complaint on the ground that the respective second causes of action failed to state facts sufficient to constitute a class action.[3] The demurrer was overruled, and the defendants were required to answer. The defendants in their answer admitted the creation, recordation and assignments of the assessments and liens and, among their denials of the averments of the complaint, denied the invalidity of the liens.

On April 10, 1967, plaintiffs moved for a partial summary judgment to obtain an adjudication that there was no defense based upon the validity of the liens. The motion was granted, and those portions of the defendants' answers denying that the liens are invalid were stricken, and as part of the same order, the court declared the respective assessments and liens invalid. In May 1967, after entry of the order granting partial summary judgment, defendants served identical sets of interrogatories on Alpine and Morton and on Belwood and Roberts. On receipt of their joint answers and objections defendants noticed a motion pursuant to section 2030, subdivision (a), of the Code of Civil Procedure, for an order requiring plaintiffs to further answer several of these interrogatories. On the hearing of this motion the court made the order here under review. This order requires plaintiffs to make further answers to the several parts of the interrogatory 15 set forth below within 60 days. Again for convenience we direct our attention only to the interrogatories served on Alpine and Morton.

Interrogatory 15 calls on both Alpine and Morton to state "with respect to each house and lot served by Alpine Mutual Water Co.": (a) the name of the legal owners and (b) the names of the persons in possession, if not the legal owner.

---

[2]Similarly, the subject of the second cause of action is the real property consisting of the houses and lots owned by Belwood's shareholders to which its 775 shares are appurtenant.

[3]Neither the demurrer nor the order overruling the demurrer has been made a part of the record before us.

Part (c) requires them to state "as to each house and lot originally sold by grant deed conveyance to the original purchasers," particularized information: as to the original purchase price; the subsequent purchase price on each successive sale; the amount and present balance of any first and second deeds of trust and notes, and the present holders thereof; and "the date of recording, amount, nature and beneficiary or encumbrance holder of any other encumbrance now of record, in addition to the foregoing deeds of trust." Part (d) calls for similar detailed information as to each house and lot originally sold under a contract of sale. Parts (e) and (f) read as follows: " (e) State each fact upon which you base the contention that each house and lot (or any house and lot) has been damaged and the market value has been diminished. (f) State the present fair market value of each house and lot and the method used in arriving at such value; and the source from which your information was derived in computing such value."

Alpine and Morton responded to parts (a) and (b) by stating that the answers thereto may be derived from the customer accounts of Alpine "kept by agents of Ventura County Waterworks District No. 12," and offering to afford defendants the opportunity on reasonable notice to examine such records and make copies thereof. They objected to parts (c) and (d) on the grounds that to obtain the information sought would be unduly burdensome, expensive and oppressive to plaintiffs, and that the information sought is of questionable or speculative relevance.[4]

Answering part (e), Alpine and Morton say that "So far as the facts are presently known" to them, each of the properties has been damaged and the market value has diminished by reason of the cloud on the title created by the lien, which has made it more difficult for owners to sell or refinance their properties; that they are informed that in some instances owners have been unable to sell or have been required to pay the purported lien out of escrow; that they have not yet com-

---

[4]Amplifying these objections defendant says: "There are approximately 1170 houses served by Alpine and Belwood. The records of Alpine and Belwood do not contain any of the information sought, and the information is as readily available to defendants as to plaintiffs. To obtain such information, Alpine and Belwood would have to hire a real estate appraiser or person with similar experience to develop the data as to sales, prices, and encumbrances. Using an estimate of from $5.00 to $10.00 per house, the total cost of obtaining such information would be approximately from $5,000.00 to $11,000.00."

piled all the facts indicating the extent of the damage to the shareholders of Alpine; that to do so may require the employment of a real estate appraiser; and that this answer is without prejudice to producing subsequently discovered facts and opinions as to diminution in market value at the trial of the matter.

In response to part (f), Alpine and Morton say that, for the reasons stated in answer to part (e), information as to value has not been obtained, adding that the extent that this interrogatory would require them to obtain this information, it is objected to on the grounds that to obtain such information would be unduly burdensome, expensive, and oppressive, as explained in answer to parts (c) and (d).

Petitioners contend that, in overruling their objections and ordering them to make further answers to these parts of interrogatory 15 the trial court abused its discretion, and acted in excess of its jurisdiction and that the court should be restrained from enforcing its order.

### Objections of Alpine and Belwood

The admitted purpose of the challenged interrogatories is to obtain information related to the causes of action for slander of title. None of the parties suggest that the information sought has any bearing on any other claim for relief found in the complaint. At the time the court ordered plaintiffs to answer interrogatory 15 with all of its subsidiary questions, Alpine and Belwood had no interest at all in the claims for slander of title of their coplaintiffs, Morton and Roberts, for themselves or as alleged representatives of their respective classes. Alpine and Belwood do not allege that they ever owned any of the real property subjected to the invalid liens. Neither of those parties seeks in any way to share in the damages sought for slander of title by Morton and Roberts, for themselves or for the members of their classes. When the interrogatories were served, the invalidity of the liens and assessments had been adjudicated by the partial summary judgment. The common facts connecting the causes of action asserted by Morton and Roberts for slander of title and the remaining claims asserted by Alpine and Belwood having been determined, Alpine and Belwood ceased to have any interest in the Morton-Roberts slander of title actions. The trial court abused its discretion in ordering Alpine and Belwood to answer interrogatories which are unrelated to any claim for relief asserted by either of them.

## Objections of Roberts and Morton

Roberts and Morton, for themselves and for the class each represents, sought damages of $1,000 per house and lot subjected to the invalid liens of each second cause of action[5] and also damages over $1,000 per house and lot for those members of the class whose damages exceed that amount.

█ The compensatory damage which is recoverable in an action for slander of title is the pecuniary loss resulting to the person whose title was slandered resulting from the impairment of vendability thus caused, together with any other detriment proximately caused by the same wrong. (*Gudger* v. *Manton* (1943) 21 Cal.2d 537, 541 [134 P.2d 217]; *Wright* v. *Rogers* (1959) 172 Cal.App.2d 349, 365-367 [342 P.2d 447].)

The extent to which discovery is available against a plaintiff who files a class action has not been discussed in any case cited by the parties, and no case has been found which deals specifically with the problem. █ A class action is simultaneously an action by a plaintiff to recover upon his own claim and an action to recover upon behalf of those whom he represents. █ In representing himself the plaintiff is in no different position from a plaintiff in a nonclass action, and the scope of permissible discovery against him should be the same. We first deal with those discovery questions which are unaffected by the representative features of a class action.

█ Morton and Roberts were properly ordered to answer interrogatory 15 (a)-(c), subdivision (8), inclusive, (d) and (e) (relating generally to title, encumbrances, market values, and sales prices of the liened parcels) with respect to Morton's and Roberts' own liened properties. █ To the extent that the order compelled answers to those parts of the

---

[5]Compare the averments of the complaint discussed in *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 714, 716 [63 Cal.Rptr. 724, 433 P.2d 732]. The plaintiff averred, in his action to recover alleged overcharges for taxicab services filed on his own behalf and on behalf of all others similarly situated, that ''the percentage of the rate of overcharge to each member of the class was identical and uniform at all relevant times. . . . the exact amount of the overcharge can be ascertained from defendant's books and records and from information within defendant's knowledge.'' In answer to the contention that no class action was stated because every single claimant must appear in court and prove his claim, the court said, ''[T]he complaint alleges that the exact amount of the overcharge in each of the two counts is known to the defendant and can be ascertained therefrom. Assuming these facts to be true, as we must here, no appearance by the individual members of the class will be required to recover the full amount of the overcharges in each count.'' (P. 716.)

interrogatory calling for information recorded in public documents, it is *pro tanto* invalid. Such information is as readily available to the defendants as it is to the plaintiffs, and no perceivable purpose consonant with the discovery laws is served by compelling one party to search public records, compile the results and furnish them to his opponent.[6] (Cf. *Ryan* v. *Superior Court* (1960) 186 Cal.App.2d 813, 819 [9 Cal. Rptr. 147].) Into this category falls 15 (a), requiring the names of the legal owners of each house and lot served by Alpine or Belwood other than the plaintiff's own property, 15 (c), subsections (3), (5), (8), (9), and the comparable subsections of 15(d).[7]

The extent to which the scope of proper discovery is affected by the representative character of the action presents more prickly problems. It would be unfair to impose a general rule that a class representative is not required to answer any interrogatories about the members of his class or the nature of their interests in the action. It would be equally unfair to compel a plaintiff in a class action to answer detailed interrogatories concerning the class members and their respective interests. Indeed, if a class representative were obliged to answer detailed interrogatories about each class member, the benefits of a class action would be largely dissipated. We chart a middle course. ▮▮ Absent some specific showing by the objecting party to justify a contrary ruling, such as privilege, a representative plaintiff can be compelled to supply his adversary with the information about his class which is in his possession or readily available to him and which is not equally available to an adversary. ▮▮ A representative plaintiff cannot be compelled to supply information concerning members of his class or their interests in the action which is neither in his possession nor control, unless the interrogatory is directly related to his own standing to maintain the action, to the existence of an ascertainable class, or to the existence of

---

[6]Ordinarily it is not a ground for objection to an interrogatory that the answer is known to the party who seeks the information. (*Singer* v. *Superior Court*, 54 Cal.2d 318, 324 [5 Cal. Rptr. 697, 353 P.2d 305].) It is frequently important for an interrogating party to compel his adversary to admit a known fact for the purpose of preventing him from later shifting his ground. (See *Durst* v. *Superior Court* (1963) 218 Cal.App.2d 460, 466 [32 Cal.Rptr. 627].) The reason for the general rule has no application to recorded public documents.

[7]We interpret these interrogatories to refer only to recorded instruments. The defendants cannot reasonably have intended the plaintiffs to express their conclusions about the legality of titles or encumbrances founded upon unrecorded instruments.

that community of interest which is required to sustain a class action. (See *Daar* v. *Yellow Cab Co.*, *supra*, 67 Cal.2d at pp. 704, 706-716.) A representative cannot be compelled to respond to interrogatories about any class member's separate claim as distinguished from the common claim of the class which may be tried with or as a part of the class action. (See *Darr* v. *Yellow Cab Co.*, *supra*, 67 Cal.2d at p. 706.)

 Applying these general principles to the facts before us we conclude that the court abused its discretion in ordering the plaintiffs to answer interrogatories 15 (a), (b), (c) subsections (1)-(8), (d) and (f), excepting only to the extent that the questions are directed to plaintiffs' own parcels.

 It appears neither unfair nor unduly burdensome to require a class representative to respond to questions relating to a common fund, the existence of which he has pleaded.

 The plaintiffs alleged on information and belief that each parcel subjected to the invalid liens suffered damages in the sum of $1,000. Insofar as interrogatory 15 (e) relates to the averments of paragraph XIII and thus probes the facts upon which that paragraph is based, the plaintiffs should be compelled to answer the interrogatory. The plaintiffs' answer to 15 (e) supplies virtually no information which was not obtainable from the face of the complaint itself. Plaintiffs' only objections to the interrogatory were that the information was not presently available to them and the acquisition of the information would be unduly burdensome. The fact alone that the response to an interrogatory may be expensive and burdensome does not justify a refusal to answer. (*West Pico Furniture Co.* v. *Superior Court* (1961) 56 Cal.2d 407, 417-418 [15 Cal.Rptr. 119, 364 P.2d 295].) The court did not err in ordering plaintiffs to respond anew to that interrogatory. However, the plaintiffs cannot be compelled to supply detailed answers to interrogatory 15 (e) as it may relate to paragraph XIV of the complaint because paragraph XIV is concerned, not with the establishment of a common fund, but with the individual claims of members of the class, and to sustain those claims the class members must personally intervene in the action. (See *Daar* v. *Yellow Cab Co.*, 67 Cal.2d at pp. 709-710, 713, 716 [63 Cal.Rptr. 724, 433 P.2d 732].)

Let a peremptory writ of prohibition issue requiring respondent court to vacate its order compelling Alpine and Belwood to answer the specified interrogatories and further to

vacate its order compelling Roberts and Morton to answer the specified interrogatories and directing it to reconsider the objections of Roberts and Morton to those interrogatories, and to make its order in reference thereto in accordance with the views expressed herein.