[L.A. No. 30000. In Bank. Aug. 30, 1972.]

SOUTHERN CALIFORNIA EDISON COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
RICHARD CARLSON et al., Real Parties in Interest.

## COUNSEL

Rollin Woodbury, Chase, Rotchford, Drukker & Bogust, David Clark and William C. Falkenhainer for Petitioner.

No appearance for Respondent.

Greenberg & Glusker and Michael K. Collins for Real Parties in Interest.

David B. Gold, Marshall B. Grossman, Schwartz & Alschuler, Stephen Z. Meyers and Alan Goldhammer as Amici Curiae on behalf of Real Parties in Interest.

## OPINION

**SULLIVAN, J.**—Petitioner Southern California Edison Company seeks a writ of prohibition, mandate or certiorari to compel respondent superior court to vacate a protective order made during the course of discovery proceedings. (Code Civ. Proc., § 2019, subd. (b)(1).)[1]

Briefly stated, the pertinent facts are as follows. Real parties in interest (hereafter "named plaintiffs")[2] on behalf of themselves and all other persons similarly situated (hereafter "unnamed plaintiffs") commenced against petitioner Southern California Edison Company (hereafter "defendant") the underlying class action for damages for trespass and nuisance, and for injunctive relief.[3]

The complaint in essence alleged that the named and unnamed plaintiffs comprised a class of approximately 1,500 persons who owned boats which were moored in King Harbor in Redondo Beach; that in the course of operating a plant for generating electrical power, defendant discharged great quantities of particulate matter and pollutants which showered upon plaintiffs' boats and damaged them; and that the issue whether defendant's acts constituted trespass or nuisance or both was one of common and

---

[1]Hereafter, unless otherwise indicated, all section references are to the Code of Civil Procedure.

[2]The named plaintiffs, referred to in the court below as "representative plaintiffs," are: Richard Carlson, Norman Rosen, Donald Fulmer, William Hirshag and Lyman Rich.

[3]Several other defendants are sued by fictitious names. Since Edison is the only defendant involved in the pending discovery proceedings and in the instant proceedings before this court, our reference herein to "defendant" is intended to mean defendant Edison.

general interest to all members of the class. Plaintiffs prayed for compensatory damages in the sum of $5,000,000; exemplary damages in the sum of $5,000,000; and for a permanent injunction. Defendant's answer denied all material allegations of the complaint and set forth certain affirmative defenses.

Edison commenced discovery proceedings. The named plaintiffs supplied defendant with a list of the names, last known addresses, and telephone numbers of the approximately 500 unnamed plaintiffs who were members of the King Harbor Boat Owners Association. From this list defendant selected 20 names at random and noticed the taking of their depositions. Defendant took the position that the service of subpoenas on these deponents was not required and that, in accordance with section 2019, subdivision (a)(4), written notice served upon the attorney for the named plaintiffs was sufficient to compel attendance, since the deponents were persons for whose immediate benefit the action was being prosecuted.

Although they disagreed, the named plaintiffs upon being served with notices to take depositions, attempted to cooperate in the production of the deponents. After extensive efforts, the attorney for the named plaintiffs succeeded in producing only two of the deponents. The rest were unable to attend, or could not be contacted, or refused to appear.

Defendant then noticed the taking of depositions of 20 more persons selected at random from the roster of the Boat Owners Association. According to plaintiffs' attorney, defendant's attorneys then announced their intention to exclude from the class, pursuant to section 2034, subdivision (d), all persons who failed to appear.

Plaintiffs then moved for a protective order (§ 2019, subd. (b)(1)) to prevent Edison's assertedly improper discovery, on the ground that the order was necessary to protect plaintiffs, their attorneys, and the members of the class from "annoyance, embarrassment, and oppression." The motion requested an order that only the five named plaintiffs were persons described by section 2019, subdivision (a)(4), as those who could be compelled to attend depositions on mere written notice to the opposing counsel.

After a hearing, the trial court granted the motion in part and denied it in part. A protective order was issued on the ground that it was "unfair" to prospective class members and to the named plaintiffs' counsel to require the latter to produce for deposition anyone other than the named plaintiffs. The court quashed defendant's notices of deposition but held that defendant could renotice depositions if subpoenas were issued in the

usual form.[4] Defendant then filed the instant petition for an extraordinary writ in the Court of Appeal which issued an alternative writ of mandate and thereafter a peremptory writ. We granted a hearing.

The crucial question is whether the trial court abused its discretion by issuing the protective order. The parties agree that the answer to this question depends in turn on the resolution of a problem of statutory interpretation of section 2019, subdivision (a)(4). That section provides in pertinent part: "In the case of depositions of a person *for whose immediate benefit an action or proceeding is prosecuted or defended* . . . the service of a subpoena upon any such deponent is not required if proper notice of the taking of such deposition is given to the attorney of the party prosecuting or defending the action or proceeding for the immediate benefit of the deponent or to such party, if he has no attorney." (Italics added.) The issue posed herein is whether *unnamed plaintiffs in a class action* are "person[s] for whose immediate benefit an action or proceeding is prosecuted." If they are such persons, within the meaning of the portion of the statute just quoted, then the defendant in the class action may take their depositions on mere notice to the attorney for the named plaintiffs, *subject to* the limitations of section 2019, subdivision (b)(1); if not, the defendant must serve subpoenas upon them.

Defendant contends that we should deem the unnamed plaintiffs to be persons "immediately benefited" by the prosecution of the action under the test set forth in *Waters* v. *Superior Court* (1962) 58 Cal.2d 885, 897-898 [27 Cal.Rptr. 153, 377 P.2d 265]. In that case, which involved an attempt to take the deposition of Howard Hughes merely by serving written notice upon counsel for the codefendant Hughes Tool Co. (of which Hughes was the sole shareholder), we adopted the New York characterization of a "person for whose immediate benefit an action or proceeding is prosecuted." We said that such a person is one "who would have an immediate right to the amount recovered or some portion of it

---

[4]The trial judge further remarked: "The particular ground of the ruling is based upon the fact that subpoenas were not issued to the deponents and, at least for the purposes of noticing their depositions, I am treating them as though they are non-party deponents. [¶] Now, I recognize that they are in what might be characterized as a hybrid classification, at least, but for purposes of this deposition, the present ruling is based upon this court's opinion that it is appropriate and fair and a proper interpretation of the discovery statutes to require that the persons who have been named as members of the class, but who are not named plaintiffs, should be subpoenaed rather than have their depositions noticed without subpoena. [¶] I think the class could, in some cases, include thousands and conceivably millions of people, and I have already stated my thinking that it is an unwarranted and improper burden upon counsel for the plaintiff to require that he produce them on pain of a forfeiture to those persons if the counsel cannot produce them."

as soon as it was recovered by the nominal plaintiff. [Citations.]" (*Id.* at p. 897.) Defendant points out that in the case at bench the unnamed plaintiffs would likewise have an *immediate right* to share pro rata in any judgment awarded to plaintiffs; such is an essential recognition of the representative nature of the class action, which the named plaintiffs have a fiduciary obligation to continue until success is obtained for *all*. (*La Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 871 [97 Cal. Rptr. 849, 489 P.2d 1113].) Defendant therefore argues that the unnamed plaintiffs would be persons immediately benefited by the prosecution of the action under the *Waters* holding; that section 2019, subdivision (a)(4) contains no exception for class actions; that no undue burden will be placed on the named plaintiffs by requiring them to produce the unnamed plaintiffs for deposition; and that Edison legitimately needs to take the depositions of the unnamed plaintiffs in order to determine whether the issues of law or fact common to the class members predominate over those affecting only individual members.

The named plaintiffs make in essence three points in reply to these arguments and in support of their basic contention that the unnamed plaintiffs should not be considered persons "for whose immediate benefit [the] action or proceeding is prosecuted," as that phrase is used in section 2019, subdivision (a)(4).

First, they urge that *Waters* interpreted the "immediate benefit" language of section 2019, subdivision (a)(4) in the context of a person who prosecutes or defends an action purely as a nominal party, for the immediate benefit of another, in the traditional sense. They argue that the *Waters* interpretation need not be controlling in the class action context. Second, they contend that the reasons supporting this phraseology of section 2019, subdivision (a)(4) have little force in the class action setting. It is urged that the class action defendant will obtain his most useful discovery from the named plaintiffs and little of value from the unnamed plaintiffs, while the reverse is true in the ordinary representative situation. In the latter situation, so the argument runs, the defendant ordinarily must "go beyond" the nominal plaintiff and take the deposition of the person immediately benefited by the prosecution of the action who usually has knowledge of its underlying facts. Furthermore, it is argued that defendant, having obtained the membership list of the association, has just as much information about the class as the named plaintiffs and is just as capable as they of securing the attendance of the unnamed plaintiffs for depositions. Third, and most importantly, the named plaintiffs contend that the allowance of merely a notice procedure for the taking of depositions will destroy the

effectiveness of the class action as a litigation tool and as an economic method of adjudication.

It is not possible to interpret the pertinent language of section 2019, subdivision (a)(4) in the class action context by resort to legislative history, since there is none[5] which sheds light on the meaning of these words. Nor do we find this language in any of the pertinent Federal Rules of Civil Procedure (either concerning class actions specifically (rule 23) or deposition procedures generally, e.g., rules 26-32, 37, 45(d)), which we have heretofore utilized as constructional aids together with federal case law, in the absence of controlling California authority. (*La Sala* v. *American Sav. & Loan Assn., supra,* 5 Cal.3d 864, 872; *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 821 [94 Cal.Rptr. 796, 484 P.2d 964]; *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 709 [63 Cal.Rptr. 724, 433 P.2d 732].) We therefore turn for guidance to the *Waters* precedent interpreting section 2019, subdivision (a)(4) in the ordinary "nominal plaintiff" setting, and to our case law concerning class actions.

First, we find it impossible to reject application of the *Waters* holding to the instant case. At the outset it is manifest that the *Waters* interpretation, as an abstract proposition, makes sense: Persons "immediately benefited" by the prosecution of an action are indeed those "who would have an immediate right to the amount recovered or some portion of it as soon as it was recovered by the nominal plaintiff." There is probably no better way to construe "immediate benefit" than as an immediate share in the recovery.

Next, it can no longer be doubted that the unnamed class action plaintiffs *do* have the immediate right to share pro rata with the named plaintiffs in the amount of the judgment actually recovered. ■ We recently recognized this essential element of the class action in *La Sala* v. *American Sav. & Loan Assn., supra,* 5 Cal.3d 864, 871: "When a plaintiff sues on behalf of a class, he assumes a fiduciary obligation to the members of the class, surrendering any right to compromise the group action in return for an individual gain. ■ Even if the named plaintiff receives all the benefits that he seeks in the complaint, such success does not divest him of the duty to continue the action for the benefit of others similarly situated." ■ Moreover, the simple fact that the prospective deponents herein do enjoy the status of unnamed plaintiffs sufficiently *shows* them to be persons immediately benefited by the prosecution of the action. In that respect the instant facts differ from *Waters,* where we found that Howard Hughes'

---

[5] Paragraph (4) of subdivision (a) was inserted in section 2019 by the 1959 amendment to the section. (Stats. 1959, ch. 1590, pp. 3922-3923, § 2.)

alleged status as merely that of sole shareholder of a defendant corporation was insufficient, without more, to deem him the person immediately benefited by the corporation's defense of the action. (*Waters* v. *Superior Court, supra,* 58 Cal.2d 885, 897-898.)

Thus, the essential nature of the class action impels us to hold that the unnamed plaintiffs herein *are* persons "for whose immediate benefit an action or proceeding is prosecuted," within the meaning of section 2019, subdivision (a)(4).[6] We draw this conclusion in spite of the above forceful arguments presented by the named plaintiffs for distinguishing the class action context from the ordinary representative situation posed by *Waters.* As will immediately appear, we agree with these arguments, but we find their thrust to be directed to justification of the protective order issued pursuant to section 2019, subdivision (b)(1), rather than to the interpretation of section 2019, subdivision (a)(4).

Our holding that the unnamed plaintiffs are persons "immediately benefited" within the meaning of section 2019, subdivision (a)(4) does not end the matter. The parties misconceive the extent of the issues before us by seemingly conceding that the *sole* problem to be resolved is the interpretation of the language of that subdivision in the class action setting. ▓▓ Notwithstanding our above holding, we must still decide whether the trial court was justified in issuing a protective order, pursuant to section 2019, subdivision (b)(1), directing that defendant serve subpoenas on the deponents. In other words, we are of the opinion that the underlying procedural problem—whether subpoenas are required—must be solved by resort to the various paragraphs of section 2019 taken as a whole, including the limiting language of subdivision (b)(1), rather than by examination of subdivision (a)(4) in isolation.

Section 2019, subdivision (b) (1) provides in pertinent part: "Upon motion seasonably made by any party or by the person to be examined . . . for good cause shown, the court in which the action is pending may make an order that the deposition shall not be taken . . . or the court may make any other order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression." We are unable to conclude, in spite of our holding concerning section 2019, subdivision (a) (4), that the trial court's order pursuant to section 2019, subdivision (b) (1), requiring Edison to subpoena the unnamed plaintiffs in order to take their depositions, constituted an abuse of discretion.

---

[6]We intimate no view as to whether unnamed class action plaintiffs are such persons in *other* statutory contexts where the phrase presently appears: section 2016, subdivision (d)(2) of the Code of Civil Procedure and section 776, subdivision (d)(1) of the Evidence Code.

The underlying problem posed by the trial court's order is, as with so many discovery situations, a practical one: the allocation of the *burden* of securing the attendance at depositions of the unnamed plaintiffs, between defendant and the named plaintiffs. We do not doubt that Edison has the "right" of discovery relevant to the sufficiency of the class allegations (e.g., the alleged predominance of common issues of law and fact), as it also has discovery rights as to the merits of the case (cf. *Alpine Mut. Water Co.* v. *Superior Court* (1968) 259 Cal.App.2d 45, 54-55 [66 Cal. Rptr. 250]); but this posing of the issue in the abstract begs the procedural question herein and settles nothing.

■ The correct test to be employed in properly allocating the burden of discovery between the parties is stated in *Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 383-384 [15 Cal.Rptr. 90, 364 P.2d 266]: "In the exercise of its discretion the court should weigh the relative importance of the information sought against the hardship which its production might entail, and it must weigh the relative ability of the parties to obtain the information before requiring the adversary to bear the burden or cost of production, keeping in mind the statutory admonition of entering an order consistent with justice."

■ In the instant case, several factors warranted the trial court's conclusion that there was good cause for the issuance of a protective order: Edison was just as able as the named plaintiffs to compel the attendance at deposition of the unnamed plaintiffs.[7] The unnamed plaintiffs are mem-

---

[7] We recognize the practical fact that the attorney for the named plaintiffs in most class actions, where the class is loosely knit and disorganized, often has little or no knowledge of the specific unnamed persons comprising the rest of the class, nor control over their actions. Our view concerning the proper allocation of the burden of discovery might be different if the class alleged were a closely organized group, where the members generally knew each other and participated together in the planning of the lawsuit. Such is not the case here. We agree with the following statements in *Alpine Mut. Water Co.* v. *Superior Court, supra,* 259 Cal.App.2d 45, 54-55, where the court discussed the analogous problem of interrogatories pressed on class members generally by a defendant: "Absent some specific showing by the objecting party to justify a contrary ruling, such as privilege, a representative plaintiff can be compelled to supply his adversary with the information about his class *which is in his possession or readily available to him and which is not equally available to an adversary.* A representative plaintiff cannot be compelled to supply information concerning members of his class or their interests in the action *which is neither in his possession nor control, unless the interrogatory is directly related to his own standing to maintain the action, to the existence of an ascertainable class, or to the existence of that community of interest which is required to sustain a class action.* [Citation.] A representative cannot be compelled to respond to interrogatories about any class member's separate claim as distinguished from the common claim of the class which may be tried with or as a part of the class action. [Citation.]" (Italics added.) The *Alpine* court was not faced, as we are here, with the additional question as to which party should bear the burden of securing the attendance of the deponent.

bers of a loosely knit class; the named plaintiffs may be able to assert little, if any, control over them. Most importantly, it was charged that defendant planned to continue noticing the depositions of batches of unnamed plaintiffs and to move for exclusion from the class of those who did not appear.

We fear that the notice procedure employed by Edison is susceptible of great abuse. In essence, plaintiffs' attorneys will be forced to expend extraordinary time and effort to round up persons of a disorganized class with whom they probably have had no prior contact; such occurred in the instant case. Prospective deponents who do not heed informal efforts on the part of counsel and do not appear will face potential exclusion. Thus, a defendant can effectively stifle a class action at the discovery stage, either by imposing impossibly expensive burdens on the named plaintiffs or by chipping away at the size of the class through exclusion of the unnamed plaintiffs. It is especially vital to prevent such "chilling" of class actions in light of their new importance as a litigation tool, presaged by recent federal cases and our own decisions in *Daar* v. *Yellow Cab, supra,* 67 Cal.2d 695 and *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800.

The court below balanced the defendant's right of discovery against these realistic considerations, unique to the class action setting, argued by the named plaintiffs. In the absence of express legislative guidance the court decided that the burden of producing the unnamed plaintiffs for deposition should rest with defendant — without reaching the question of whether the information sought by Edison is relevant to the class allegations, the claims for damages on their merits, or both. We feel that the trial court made a wise decision, "consistent with justice," (*Greyhound* v. *Superior Court, supra,* 56 Cal.2d 355, 384) in finding that good cause for a protective order had been shown. Therefore, we hold that the court did not abuse its discretion in issuing the order here under attack.

■ We add a final observation. The named plaintiffs urge us to declare a general rule for class actions under which defendants would be required to show good cause for the taking of a deposition of unnamed members of the class. In other words, instead of plaintiffs being required to show good cause for a protective order with respect to such depositions, the defendants would have the initial burden of showing good cause to take them. This we decline to do.

In *Greyhound* v. *Superior Court, supra,* 56 Cal.2d 355, 379, we commented: "The courts should be careful to impose the burden of showing discretion or a lack of it on the proper party. As already pointed out there are several situations where the litigant starts the discovery process without

prior court intervention [e.g., depositions]. The burden is then on the party seeking to deny that right. [Fn. omitted.] On the other hand, where the party must show 'good cause' [fn. omitted] for the disclosure, obviously the burden is on the one seeking disclosure [e.g., motions for production and inspection (Code Civ. Proc. § 2031, subd. (a)), motions for medical examination (Code Civ. Proc., § 2032, subd. (a))]."

Protective orders to prevent depositions from being taken, or to prevent annoyance or harassment of a party or witness, are of course statutorily governed by section 2019, subdivision (b) (1). This is a statute whose language clearly indicates that the burden of showing "good cause" (as defined by § 2036, subd. (a)) for a protective order rests on the party seeking to deny the other's discovery right. We will not reverse this statutorily created burden and treat section 2019, subdivision (b) (1) as though it were a statute which, like section 2031, subdivision (a) or section 2032, subdivision (a), *conditions* discovery on a showing of good cause. This conclusion holds in the class action context as well, even though the result, as the named plaintiffs argue, may be to force named class action plaintiffs to seek protective orders in many cases. The Legislature obviously did not intend for us to reverse a burden so clearly imposed. California courts must fashion "pragmatic procedural devices" (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 820) to handle class actions within the framework of the relevant statutes. If class action plaintiffs, whether named or not, are subjected to unduly onerous methods of discovery, their remedy is to invoke section 2019, subdivision (b) (1).

The alternative writ of mandate is discharged and the petition for a peremptory writ is denied.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.