[Civ. No. 33282. First Dist., Div. Two. June 9, 1975.]

JOHN R. PREVITE et al., Plaintiffs and Appellants, v.
LINCOLNWOOD, INC., Defendant and Respondent.

## Counsel

M. Van Smith for Plaintiffs and Appellants.

Crist, Crist, Griffiths, Bryant & Schulz and Roger.E. Crist for Defendant and Respondent.

## Opinion

**BRAY, J.\***—Plaintiffs appeal from an order of the Santa Clara County Superior Court relating to the class of plaintiffs and an order granting new trial.

### Issues Presented

1) The order ruling that only those Commodity Investors Associated

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

limited partners who returned a notice requesting inclusion in the action be included in the class of plaintiffs was erroneous.

2) The order granting new trial did not comply with section 657 of Code of Civil Procedure.

## Record

Plaintiffs on behalf of themselves and other limited partner investors in a mutual fund known as Commodity Investors Associated (hereinafter "CIA") filed a complaint against defendant Lincolnwood, Inc. (hereinafter "Lincolnwood") for damages for common law deceit, violations of the California Corporate Securities Law of 1968, and violation of a fiduciary duty by churning.

Defendant answered denying the material allegations of the complaint. The court entered an order ruling that only those investors in CIA who returned a notice requesting inclusion would be included in the class of plaintiffs. After jury verdict, judgment was entered in favor of plaintiffs in the sum of $118,058.

Thereafter the court entered an order with specifications granting a new trial on the ground of insufficiency of the evidence. Plaintiffs appeal from both orders.

## Statement of Facts

CIA was a California limited partnership which was formed for the purpose of allowing small investors to pool capital to invest in the commodity future contracts market. The general partners of CIA were Irwin Rodgers, Chester Conrad, and Ely Brandes. Before becoming acquainted with one another Conrad and Rodgers had separately conceived the idea of such a mutual fund. In June 1969, while both were working at Schneider Bros., a brokerage firm, the two began to work on the idea. Subsequently they included Brandes who was an economic consultant privately employed. The three put together a public offering and after numerous consultations with the California Commissioner of Corporations concerning the offering circular and how the public should be protected, a permit was issued by the Commissioner of Corporation in March 1970. Conrad testified that the permit was issued before he knew of the existence of defendant Lincolnwood. The offering was approved with a Securities and Exchange Commission sanction date of July 1970.

The limited partnership interests could not be sold prior to the Securities and Exchange Commission sanction date.

Conrad testified that he became associated with Lincolnwood in June 1970. He testified that he was self-employed but trading through Lincolnwood as a commodity futures solicitor. The offering circular for the limited partnership interests in its description of the general partners stated that Conrad and Rodgers were co-managers of the Palo Alto office of Lincolnwood.

Four hundred and seventy limited partnership interests were sold to the public at $300 each. Prior to becoming a limited partner each person was required to sign under penalty of perjury a subscription agreement indicating he had relied solely on the information contained in the offering circular as the basis for his investment. The offering circular contained a section titled "Risk Factors To Be Considered." The section stated that the worth of commodity future contracts could be affected by many unforeseen factors; that as a result of commodity contracts being traded on low margins commodity trading offered an extremely high leverage which while enhancing the possibility of rapid capital appreciation also held an equivalent high degree of risk; that the success or failure of CIA was heavily dependent upon the skill and management of the general partners; and that the decisions concerning the conduct, operation and management of CIA business would be made by the general partners in their sole discretion. The high risk in commodity trading was also discussed in a later part of the circular.

The circular stated, "The general partners have the power to set over-all trading and operating policies of The Partnership including the determination of day-to-day trading decisions and to otherwise manage and supervise the conduct and operation of The Partnership business." The circular indicated, "Although there is no express agreement, one or more of the general partners may be engaged to purchase or to sell commodity futures on behalf of The Partnership, in which event the then prevailing customary brokerage fees charged for similar transactions will be charged to The Partnership." It was also indicated that commissions, the amount and rate of which were subject to regulation by the commodity exchange on which the particular commodity was traded, would decrease profits or increase losses of the partnership, and that such commissions ranged from $20 to $70 per contract. The circular also provided that the general partners collectively would be entitled to receive compensation equivalent to 9 percent of the net growth in the

CIA commodity investments and other assets during each three calendar months, but that in the absence of net growth the general partners would serve without compensation. It was also indicated that certain guidelines would be observed by the general partners to minimize the risks involved, one of these guidelines being that "[i]ndividual invesments will be made in units of no more than one percent (1%) of the total capital of The Partnership and will be immediately protected by 'stop-loss' orders insuring that not more than forty percent (40%) of the amount invested in such unit be lost prior to liquidation of The Partnership investment."

Conrad was the only general partner called as a witness by either side, and his testimony composes well over half the transcript. He testified that in the advertising of the sale of the CIA partnership interests there was no mention of Lincolnwood, that Lincolnwood was not mentioned in the offering circular other than an indication that Rodgers and he worked there; and that CIA had its own stationery and no CIA letters were sent out on Lincolnwood stationery. He further testified that there was an office at the Palo Alto office of Lincolnwood designated for the operation of CIA, and that CIA paid $50 a month to Lincolnwood to sublease the office space. He stated that another broker employed by Lincolnwood was paid $50 per month by CIA to handle certain bookkeeping functions, and that Keith Campbell, another Lincolnwood employee, was also paid by CIA to do certain promotional work in relation to the sale of the limited partnership shares. Campbell testified that his employment and responsibilities to CIA and Lincolnwood were totally different.

Conrad testified that at the time he negotiated his position with Lincolnwood all that Lincolnwood knew about CIA was that there was soon to be a public offering. At the time he associated with Lincolnwood there was a verbal agreement that he would receive 30 percent of the commission on all the brokerage he placed through defendant's Palo Alto office. CIA was not specifically mentioned but it was understood that commissions on any CIA account would be the same as on any other customer account he handled. In accounts jointly handled by Rodgers and him they would split the 30 percent. The agreement was made prior to the effective Securities and Exchange Commission sanction date and sale of CIA interests. Conrad stated that his position as the general partner of a mutual fund was possibly an inducement to Lincolnwood to engage him. Conrad testified that there was no agreement with Lincolnwood that CIA had to trade through that brokerage firm, and that this was purposely done for flexibility. In fact, all trading was conducted through Lincolnwood.

Conrad stated that Lincolnwood was in no way involved in decision about investments or the handling of the mutual fund; that this was handled by the CIA general partners. He testified that during each work day he functioned both as a general partner of CIA and as an office manager for Lincolnwood, and that most of his time was spent analyzing the commodity market, which benefited both concerns.

Interrogatories answered by Lincolnwood indicated that Lincolnwood in no way supervised the amount of trading by Conrad and Rodgers of the CIA account. And, Louis Malter, a limited partner in CIA, testified that in investing his money in CIA he believed he was dealing with the three general partners, not with Lincolnwood.

The evidence revealed that during the six-month existence of CIA[1] there were 461 investments made, approximately $70,000 in losses sustained by the investments and $55,000 in commissions charged to CIA by Lincolnwood. Conrad testified that commodities were one of the most unpredictable vehicles for investment available. He flatly stated that the partnership trading was poorly done but denied any intentional wrong-doing in the management of the CIA investments such as day trading,[2] churning,[3] violation of the 1 percent investment guidelines or of the 40 percent stop-loss guidelines.

The denial of intentional wrongdoing was disputed by plaintiffs' expert witness, Allan Chu, in his analysis of the trading done in the CIA account. However, as the trial court subsequently noted in granting defendant's motion for a new trial Chu's qualifications and experience in the commodities field were subject to serious question.[4] He had never qualified as an expert in a court before. He had been a broker in commodity futures for only an 18-month period from November 1970 to May 1972, and for 3 to 4 months of that time he was not employed by a brokerage house but was in the midst of "changing" from one house to another.

---

[1]The partnership was dissolved after six months pursuant to a statement in the offering circular that such would occur if there was a decrease in the initial partnership capital to less than 50 percent.

[2]Day trading was defined as making a buy and sale transaction on the same contract in one day.

[3]Churning was defined as intentional overtrading by a broker in order to earn commissions.

[4]The trial judge further stated in his order granting a new trial, "This witness' testimony should have been disregarded completely by the jury. . . ."

*1) The trial court's ruling that only those CIA limited partners who returned a notice requesting to be included in the class of plaintiffs would be included in said class was error.*

■ Prior to trial the court ordered that notices be sent to all members of the class of plaintiffs by the attorney for plaintiffs, and ruled that only those who responded that they wished to be included in the class of plaintiffs would be. Those who failed to respond would be excluded from the class. Plaintiffs contend that the court erred in this determination of who should compose the class of plaintiffs.

The California Supreme Court has advised that in the absence of controlling California authority the trial courts utilize the class action procedures of the Federal Rules of Civil Procedure as constructional aids. *(Southern California Edison Co.* v. *Superior Court* (1972) 7 Cal.3d 832, 839 [103 Cal.Rptr. 709, 500 P.2d 621]; *La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 872 [97 Cal.Rptr. 849, 489 P.2d 1113]; *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 821 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]; *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 709 [63 Cal.Rptr. 724, 433 P.2d 732].)

There is no specified procedure in California on the point here raised. However, under federal rule 23, subdivision (c), subsection (2),[5] individual notice must be sent to each class member who can be identified through reasonable effort. Such notice must advise that the court will exclude the class member if he so requests by a specified date and that the judgment will include all members who do not request exclusion. In *Berman* v. *Narragansett Racing Association* (D.R.I. 1969) 48 F.R.D. 333, defendants suggested that an affirmative response to the notice was required by class members who wished to be included in the class. The court stated at page 338, ". . . the Court does not agree that some minimum affirmative response is required of those who will be bound by this judgment. Such a requirement is tedious, is not necessitated by the rule, . . ."

---

[5]Rule 23, subdivision (c), subsection (2) reads: "In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel."

Of further persuasion is the fact that under the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.), subdivision (e) of section 1781 of the Civil Code, concerning consumer class actions, states that when notice is given to members of the class said notice must indicate that the court will exclude a member if he so requests by a specified date and that the judgment will include all members who do not request exclusion. Although the instant action is not one covered by the Consumers Legal Remedies Act the indication therein of who will and will not be considered class members is a direct adaptation of the federal rule and is indicative of the California legislative trend.

Based upon the Supreme Court's indication that the federal rules should be used as guidance it appears that the trial judge erred in his limitation of the class, and that notice should be sent to all potential class members[6] and the class determined in accordance with rule 23.

*2) The order granting new trial did not comply with section 657 of the Code of Civil Procedure.*

Plaintiffs appeal from the order granting the defendant a new trial for insufficiency of the evidence. Under Code of Civil Procedure section 657, when a new trial is granted, the court must specify the ground or grounds upon which it is granted and also specify the reasons for granting the new trial upon each ground stated. That section further states, in part: "On appeal from an order granting a new trial the order shall be affirmed if it should have been granted upon any ground stated in the motion, whether or not specified in the order or specification of reasons, except that (a) the order shall not be affirmed upon the ground of the insufficiency of the evidence to justify the verdict or other decision, or upon the ground of excessive or inadequate damages, unless such ground is stated in the order granting the motion and (b) on appeal from an order granting a new trial upon the ground of the insufficiency of the evidence to justify the verdict or other decision, or upon the ground of excessive or inadequate damages, it shall be conclusively presumed that said order as to such ground was made only for the reasons specified in said order or said specification of reasons, and such order shall be reversed as to such ground only if there is no substantial basis in the record for any of such reasons." In *Miller* v. *Los Angeles County Flood Dist.* (1973) 8 Cal.3d 689, 696-697 [106 Cal.Rptr. 1, 505 P.2d 193], the court said: "In *Mercer* [*Mercer* v. *Perez* (1968) 68 Cal.2d 104 (65 Cal.Rptr. 315, 436 P.2d 315)] we interpreted this requirement [of Code of

---

[6]There are approximately 275 potential class members.

Civil Procedure section 657] to mean that 'the judge must briefly recite the *respects* in which he finds the evidence to be legally inadequate; no other construction is consonant with the conclusive presumption on appeal that the order was made "only for the reasons specified" . . . such an order must *briefly identify the portion of the record* which convinces the judge "that the court or jury should have reached a different verdict or decision." ' " In *Aronowicz v. Nalley's, Inc.* (1972) 30 Cal.App.3d 27, 39 [106 Cal.Rptr. 424], the court said that the judge "must not merely state his reasons in the terms of conclusions, issues or ultimate facts [citations] but must supply the reviewing court with information such as to enable it to review in a meaningful way the order granting the new trial [citation]."

■ In this case the new trial was granted upon the ground of insufficiency of the evidence, hence it is necessary for this court to determine whether the order set forth the reasons for its granting as required by section 657.[7]

It is conceded and the court so stated that in order for the plaintiffs to be able to recover against Lincolnwood, the sole defendant, the evidence must show that if any fraud was committed by the general partners in CIA that they were either agents or under the control of Lincolnwood within the meaning of Corporations Code section 25504. Thus, the order must set forth the reasons why the court concluded that the men were neither agents nor under the control of Lincolnwood. If the order does not meet this requirement, it must be presumed that the evidence supports the implied finding of the jury that the general partners were agents and under the control of Lincolnwood. Then we proceed to determine the questions of fraud and the order must show reasons why the court concluded that no fraud was committed.

First we review the order to determine whether it adequately set forth reasons why the court concluded that there was no agency or control shown. The order states that from a review of the evidence the court is convinced that the plaintiffs have failed to establish by a preponderance of the evidence any of the allegations of their complaint. This could be a conclusion that no agency or control was shown, but as already discussed conclusions are not enough. The order then states that CIA was

---

[7]The trial court did state: "Some question could arise as to the propriety of the plaintiff's attorney's comments in his final argument after being thoroughly informed of the Court's position on various items of evidence." However, the court did not specify this as a ground for granting the new trial. And, therefore, section 657 requires that it be conclusively presumed that the order was made on the sole ground of insufficiency of the evidence.

organized, and many partnership interests sold prior to the time the partners became employees of Lincolnwood. If this were true the court would be correct in stating that therefore Lincolnwood could not be held liable for the then acts of the partners. However, the statement is incorrect. There were no partnership interests sold before the partners' employment by Lincolnwood. Concerning possible agency or control, the court stated, "that the general partners, by clear and convincing evidence, were solely the agents of the limited partnership and did not and were not active as agents of the defendant; vis-a-vis the defendant, the general partners were clearly independent contractors." This statement is insufficient as a reason because it merely states conclusions and ultimate facts, and there is no reference to what portion of the record the court relied upon in reaching the conclusion. The court stated that Conrad was "a very honest, unusually forthright witness whose testimony should have been believed by the jury." However, the order fails to state what if any portion of his testimony provides a reason to show that no agency or control by Lincolnwood existed. The only statement of reasons reflecting on the agency and control issues that appears is that "the CIA had its own letterheads, the contents of the limited partnership agreement and certificate attached thereto; the trading decisions were made by the general partners." No other facts on the subject are stated. These facts are not enough to justify the conclusion that no agency or control existed. Moreover, it must be noted that no reference is made to where in the record the reviewing court can find that the trading decisions were only made by the partners.

Analyzing the order, we find no statement of reasons and references to the record which would support the judge's conclusion that no agency or control by defendant existed. Therefore, since "it shall be conclusively presumed that said [new trial] order as to such ground was made *only* for the reasons specified" (Code Civ. Proc., § 657) (italics added), and as here the ground of insufficiency of the evidence on the issue of agency or control is not supported by a proper specification of reasons, we may not uphold the order granting a new trial on that ground.

We now turn to determining whether the court's conclusion that there was no fraud is sufficiently supported in the order by reasons and references to the record. We consider the statements made therein on this subject. The first is that the plaintiffs have totally failed to establish any of the allegations of their complaint. As we have hereinbefore stated this is a conclusion which must be disregarded.

The order states, "that there was nothing even remotely suggesting that there was any fraud, misrepresentations or deceit exercised in the formation of the partnership or in the sale of the limited partnership interest." This is merely a conclusion with no indication as to where in the record the court found the plaintiffs' case deficient.

Next the order states: "The alleged violation of the Corporations Code proximately resulting in any loss to the plaintiffs did not exist as was clearly brought out in the testimony of Mrs. Catherine Breedlove, a limited partner investor in CIA, whose testimony was very believable and very convincing that nothing improper was done by the general partners." This obviously is a conclusion rather than a statement of facts to which she testified. ■ It is not enough to merely refer to the testimony of a witness without stating the portions of that testimony on which the court relies for its conclusions. Moreover, the court does not indicate which alleged violation of the Corporations Code it is referring to. Another conclusion rather than statement of facts is: "The plaintiff himself, John R. Previte, testified that he read and considered the brochure *which was accurate in every respect. . . .*" (Italics added.)

■ We come to the matter of churning. The court states that, "the only expert witness was one Alan [*sic*] Chu whom the Court found was entitled to very little weight as his qualifications and experience in the commodities futures field were subject to serious question. This witness' testimony should have been disregarded completely by the jury which would leave nothing supporting the churning claim." The trial court, of course, on a motion for new trial is entitled to judge the credibility of the witness—even an expert witness, to determine the probative force of testimony and weigh the evidence. (*Myers* v. *J. H. Degnan, Inc.* (1962) 205 Cal.App.2d 62, 65 [22 Cal.Rptr. 777].) The court adequately stated a reason why there was insufficient evidence for the jury to have determined that there was churning.

However, the issue of churning was only one of several issues of fraud upon which there was evidence which would support the implied finding of the jury that fraud existed and which therefore would support the verdict, even assuming that the issue of churning was eliminated. ■
An order granting a new trial in which the trial court sets out adequate reason for finding the verdict wrong on only one issue of several submitted to the jury, is erroneous. To grant a new trial in such a situation, the trial court must adequately specify reasons why the evidence is insufficient on all issues presumably found by the jury to support the verdict.

As the code states, the reviewing court is confined, in reviewing the order granting new trial, to the specific reason or reasons given by the trial court for the order and to the record thereto. As pointed out in *Mercer v. Perez, supra,* 68 Cal.2d 104, at page 108, section 657 requires that the order granting new trial in the case of insufficiency of evidence state the ground and the reasons applicable to the grounds stated. Thus, in the instant case the ground specified in the order is insufficiency of the evidence. But with the exception of the issue of churning, the order fails as to the other issues to *"briefly identify the portion of the record which* convinces the judge 'that the court or jury clearly should have reached a different verdict or decision.' " (*Scala v. Jerry Witt & Sons, Inc.* (1970) 3 Cal.3d 359, 363-364 [90 Cal.Rptr. 592, 475 P.2d 864].)

In that case the Supreme Court discussed a number of cases in which the reasons given in the orders granting new trial were in conclusive and ultimate terms, and pointed out that the specifications of reasons were insufficient in that, as in the case at bench, they did not attempt or purport " 'to recite the respects in which the evidence is legally inadequate, as is required by Code of Civil Procedure section 657,' citing Mercer." (*Scala, supra,* at p. 365.)

In *La Manna v. Stewart* (1975) 13 Cal.3d 413, 423 [118 Cal.Rptr. 761, 530 P.2d 1073], the court stated: "We meant, as the ensuing discussion in *Mercer* should have made clear, that in deciding on the *content* of the specification of reasons the trial judge need not incorporate verbatim transcriptions of the testimony or lengthy summaries of the evidence; rather, it will be sufficient if he furnishes 'a concise but clear statement of the reasons why he finds one or more of the grounds of the motion to be applicable to the case before him. No hard and fast rule can be laid down as to the content of such a specification, and it will necessarily vary according to the facts and circumstances of each case.' *(Ibid.)* We did not mean, however, that there is any room for such 'construction' of the detailed statutory requirements of the *form* of the specification of reasons. On that point our position was categorical: noting the needless administrative burden that would arise from litigating and relitigating such questions of form, we declared (at p. 124) that 'The only solution is to insist, as we do, upon *full and timely* compliance with this remedial legislation.' (Italics added.)"

In the instant case the only specification of reason as required by the statute was in reference to the issue of churning. No such specifications were made as to the other issues of fraud raised by the pleadings and the evidence, and upon which it must be presumed the jury by their verdict

found favorably to plaintiffs. As the trial court failed to specify reasons as required by section 657 as to the fraud issues presented to the jury other than that of churning, we are required to hold that the order granting new trial must be reversed.

It is with regret that we come to this conclusion as it forces us for technical reasons to reverse the order without an opportunity to determine from the record whether in view of its totality the court might have been justified in granting the new trial. But as stated in *Miller, supra,* at page 697, our determination in this respect is "required in order to serve the twofold purpose of the specification requirement; encouraging careful deliberation by the trial court before ruling on a motion for new trial, and making a record sufficiently precise to permit meaningful appellate review."

The order granting new trial is reversed and the cause is remanded to the trial court with instructions to cause a proper notice to be sent to all CIA limited partners other than those included in the present judgment informing them that they, unless they wish otherwise, are included in the class which the jury and court found were defrauded by defendant and that they may present to the court proof of their interest in the limited partnership and their right to damages against defendant. The issue of liability has been established and need not be again tried. As to damages, each person who proves that he is a member of the class shall be entitled to an amount of damages for each limited partnership share he holds in CIA equal to the amount which was apportioned to each interest in the erroneously determined class in the existing judgment.

Taylor, P. J., and Rouse, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 6, 1975.