Filed 9/13/24  Bartlett v. Ahmad CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| DAVID BARTLETT, | D083788 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. PSC1800647 ) |
| SOHAIL AHMAD et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Riverside County, Carol A. Greene, Judge.  Reversed.

Williams Iagmin and Jon R. Williams; Walker Law, Justin O. Walker and Jared A. Veliz for Plaintiff and Appellant.

Kramer, deBoer & Keane and Jeffrey G. Keane for Defendants and Respondents.

## I. INTRODUCTION

A jury awarded David Bartlett damages in a medical malpractice lawsuit against Sohail Ahmad, M.D., and Desert Spine Sport & Joint Center (collectively Respondents).  Finding insufficient evidence of causation, the trial court granted Respondents' motion for a new trial.  Bartlett appeals

from that order, claiming it violates Code of Civil Procedure section 657[1] by failing to address both grounds for negligence he submitted to the jury. We agree and reverse the order.

## II. BACKGROUND

On October 31, 2016, Dr. Ahmad performed surgery on Bartlett's right knee at Desert Spine Sport & Joint Center. That surgery included a partial knee replacement, in which Dr. Ahmad implanted a three-piece prosthetic consisting of a femoral component, a tibial component, and a polyethylene liner in between.

Bartlett went to the emergency room twice in the following week because his surgical incision bled. Those trips occurred on October 31, 2016, several hours after the surgery, and November 4, 2016. Both times the attending physicians did not observe any signs of infection at the incision site. Bartlett also went to Desert Orthopedic Center on November 8, 2016, where a physician's assistant examined his bandages and found them to be clean and dry.

Dr. Ahmad examined Bartlett in his office on November 15, 2016. Discovering signs of infection, Dr. Ahmad manually cleaned the incision site and scheduled a follow up visit two days later. Dr. Ahmad observed continued drainage from the wound on November 17, and scheduled debridement surgery for November 21. The debridement or "washout" procedure involves reopening the surgical wound and cleaning potentially infected areas with a scalpel and sterile water and may include replacing the polyethylene liner. Dr. Ahmad debrided Bartlett's knee on November 21; however, he did not remove the polyethylene liner.

---

[1] All subsequent statutory references are to the Code of Civil Procedure.

2

Dr. Ahmad referred Bartlett to an infectious disease specialist, Dr. Bachir Younes, who gave Bartlett intravenous antibiotics for 120 days following the wound cleaning procedure. Dr. Younes then prescribed Bartlett oral antibiotics for one year. Bartlett stopped taking the oral antibiotics after approximately six or seven months.

In September 2017, Dr. Steven Bradley Daines observed symptoms of infection in Bartlett's knee. Dr. Daines performed additional surgeries on Bartlett in 2017 and 2019, including a two-stage, total knee replacement.

In 2018, Bartlett filed a medical malpractice complaint against Respondents.[2] Bartlett alleged that during the November 21, 2016 washout procedure, Dr. Ahmad found a foreign object inside Bartlett's patella, "a result of carelessness, unsterile materials, and unsanitary conditions during the surgery." Bartlett also alleged that Respondents failed to properly diagnosis and treat the foreign object and his infection, allowing the infection to spread and resulting in multiple surgeries, treatments, and extended care.

During the 2022 trial on Bartlett's complaint,[3] Bartlett presented expert testimony from infectious disease specialist Dr. Gonzalo Ballon-Landa. Dr. Ballon-Landa stated that if you treat an infected prosthetic joint within the first 10 days, there is an 80 percent chance the treatment will be successful. His opinion was based on his experience and numerous lectures he attended, but not any specific medical literature. Respondents' counsel asked Dr. Ballon-Landa, "Have you ever tried to scale that period of time to if

---

[2] Bartlett's complaint contained additional causes of action for elder abuse and fraud, which were dismissed by summary adjudication. It also named other defendants against whom he did not prevail.

[3] This was the second trial. The first, which occurred in 2021, resulted in a mistrial after one of the jurors contracted COVID-19.

3

it's 12 days, [successful treatment of infection] drops a certain percentage; if it's 15 days, it goes down; by 30 days, you're actually below 50 percent chance of getting a better result?" Dr. Ballon-Landa responded, "I think that is an impossible question to answer."

Believing Bartlett developed the infection in his knee between October 31, 2016 and November 4, 2016, Dr. Ballon-Landa opined that if the debridement surgery occurred by November 10, 2016, there was an 80 percent chance Bartlett would have avoided subsequent surgeries. Dr. Ballon-Landa further testified that if Bartlett continued the oral antibiotic regimen prescribed by Dr. Younes, "he probably would not have had the problems he had." However, Dr. Ballon-Landa also stated that bacteria can attach to a prosthesis creating a "gooey/gluey type of material," which is difficult for the immune system and antibiotics to penetrate and cure.

Orthopedic surgeon Dr. William W. Winternitz, Jr., also testified on Bartlett's behalf. He opined that Dr. Ahmad breached an orthopedic surgeon's standard of care in several ways, including failing to evaluate Bartlett and debride the knee within five to seven days following the initial surgery, and not replacing the polyethylene liner during the washout procedure on November 21 because bacteria can live underneath it.

Bartlett also submitted Dr. Daines's previously recorded deposition testimony. Dr. Daines suspected Bartlett's infection in 2017 was a continuation of his initial infection that was never eradicated. He further explained that implants are non-biologic material without any blood supply,

4

so antibiotics are not generally an effective way to treat an infected implant, and replacement of the implant is commonly required.[4]

Ultimately, the jury returned a special verdict finding Respondents "negligent in the diagnosis or treatment of [Bartlett]." The jury awarded Bartlett $200,000 in non-economic damages.

After the trial court entered judgment on the jury's verdict, Respondents moved for judgment notwithstanding the verdict and a new trial. Both motions alleged insufficient evidence of causation to support the jury's findings.[5] After hearing argument on August 18, 2022, the trial court took the matter under submission. The trial court then issued its ruling on August 22, 2022, stating:

> In this case, there was evidence that [sic] provided by Dr. Winternitz that the post-operative care provided by Dr. Ahmad did not meet the standard of care. Plaintiff's Opposition, Exhibit 3, pg. 4 lines 2-28, pg. 5 lines 1-27. Dr. Winternitz did not testify as to causation. Dr. Ballon-Landa provided expert testimony regarding causation of this infection. Plaintiff's Opposition, Exhibit 2 pg. 3, lines 8-12. He testified that Mr. Bartlett developed an infection sometime between the 31st of October and the 4th of November, despite the emergency records and testimony of Dr. Tang that there were no signs of infection observed on November 4th. Plaintiff's Supplemental, Exhibit 12, pg. 27, lines 5-12. Dr. Ballon-Landa later testified that if

---

[4] Other witnesses testified at the 2022 trial, though neither Bartlett nor Respondents designated the complete trial transcript on appeal. We summarize only the relevant evidence within the limited, available transcript.

[5] The motions also alleged excessive damages, but the trial court did not address that issue in its final ruling. We are therefore prohibited from affirming the new trial order on that ground. (§ 657 [a new trial order "shall not be affirmed upon the ground of . . . excessive or inadequate damages, unless such ground is stated in the order granting the motion"].)

Mr. Bartlett had stayed on the oral antibiotics ordered by the infectious disease doctor, he would not have had the recurrence of the infection in 2017. Plaintiff's Opposition, Exhibit 2, page 46, lines 1-6. Dr. Ballon-Lando's [sic] testimony also did not seem to be with sufficient medical probability when cross-examined as he gave an opinion on a washout's success at 10 days, but said it was impossible to do with regard to 12 or 15 days. Plaintiff's Opposition, Exhibit 2, pg. 45, lines 7-22. Based upon this evidence, the Court cannot say that there is no evidence to support the verdict and thus cannot grant [judgment notwithstanding the verdict].

However, the above cited evidence on a Motion for New Trial, where the Court can and should consider the credibility independently of the jury's conclusions. In the Court's independent evaluation of the evidence, the expert testimony provided on behalf of Mr. Bartlett was insufficient to support a finding of causation. Dr. Ballon-Lando's [sic] opinions appeared to be more his experience rather that [sic] an industry standard. In addition, he was recommending completing a washout surgery within 10 days or by November 14, 2016. However, there was no evidence of an infection as of November 4th when Mr. Bartlett presented to the emergency room. The first evidence of infection was on November 15, 2016 and pursuant to the agreed upon facts, Mr. Bartlett received a washout surgery within 10 days of that date on November 21, 2016. Therefore, the Court finds that there was inadequate evidence for the jury to find causation of Mr. Bartlett's claimed injuries. The Motion for New Trial is granted.

Bartlett timely appealed from the ruling.

### III. DISCUSSION

Bartlett argues he pursued two independent negligence theories against Respondents: (1) failing to timely diagnose and treat his infection after the October 31, 2016 surgery; and (2) failing to remove the polyethylene liner during the debridement on November 21, 2016. Bartlett claims the trial

6

court's order addresses the first theory, but not the second. He contends this failure means the trial court violated section 657 and the order for a new trial must be reversed.

Respondents agree Bartlett alleged two negligence theories, but they identify them differently. They concur the first was based on delayed diagnosis and treatment of the infection but contend the second was based on the foreign object found in Bartlett's knee, not a failure to remove the polyethylene liner. Respondents claim at trial Bartlett abandoned what they identify as the second theory, and he only proceeded under the first. Respondents also argue the trial court adequately specified its reasons for finding insufficient causation evidence because it discredited Dr. Ballon-Landa's opinion regarding the timing of treatment, it noted that Dr. Ballon-Landa believed the 2017 infection was caused by Bartlett discontinuing his antibiotics, and Bartlett did not offer any expert testimony on causation regarding the failure to remove the polyethylene liner. They assert the new trial order clearly stated an evidentiary insufficiency as to any causation argument.

## A.    *Procedural Requirements for a New Trial Order*

A trial court may order a new trial based on "[i]nsufficiency of the evidence to justify the verdict." (§ 657, subd. (6).) To do so, the court must weigh the evidence and be "convinced from the entire record, including reasonable inferences therefrom, that the . . . jury clearly should have reached a different verdict." (§ 657.)

An order granting a new trial "shall specify the ground or grounds upon which it is granted and the court's reason or reasons for granting the new trial upon each ground stated." (§ 657.) "This level of specificity is required 'in order to serve the twofold purpose of the specification requirement:

7

encouraging careful deliberation by the trial court before ruling on a motion for new trial, and making a record sufficiently precise to permit meaningful appellate review.' " (*Estes v. Eaton Corporation* (2020) 51 Cal.App.5th 636, 642–643 (*Estes*).)

"No hard and fast rule can be laid down as to the content of such a specification, and it will necessarily vary according to the facts and circumstances of each case." (*Mercer v. Perez* (1968) 68 Cal.2d 104, 115.)  But " '[t]he trial judge's specification of reasons "must briefly identify *the portion of the record* which convinces the judge 'that the . . . jury clearly should have reached a different verdict.' " ' " (*Estes, supra,* 51 Cal.App.5th at p. 642.) " '[S]trict compliance' with section 657 is required," and a new trial order should be specific enough to " 'avoid any need for the appellate court to rely on inference or speculation.' " (*Estes*, at p. 642.)

B.    *Standard of Review for Order Granting New Trial*

In general, a trial court has broad discretion in ruling on a motion for a new trial.  (*Romero v. Riggs* (1994) 24 Cal.App.4th 117, 121.)  The trial court has the power to "to disbelieve witnesses, reweigh the evidence, and draw reasonable inferences therefrom contrary to those of the trier of fact," and "on appeal, all presumptions are in favor of the order as against the verdict." (*Mercer v. Perez, supra,* 68 Cal.2d at p. 112.)

However, "on appeal from an order granting a new trial upon the ground of the insufficiency of the evidence to justify the verdict . . . , it shall be conclusively presumed that said order as to such ground was made only for the reasons specified in said order . . . , and such order shall be reversed as to such ground only if there is no substantial basis in the record for any of such reasons." (§ 657.)  Accordingly, if a new trial is ordered on the ground of insufficient evidence, and the reasons stated for that ground are inadequate,

8

the record does not support the order and it must be reversed. (*Miller v. Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689, 699.)

For example, a new trial order providing "adequate reason for finding the verdict wrong on only one issue of several submitted to the jury, is erroneous. To grant a new trial in such a situation, the trial court must adequately specify reasons why the evidence is insufficient on all issues presumably found by the jury to support the verdict." (*Previte v. Lincolnwood, Inc.* (1975) 48 Cal.App.3d 976, 987 [new trial order after verdict for plaintiffs failed to comply with § 657 because there were multiple theories of liability and the order only addressed one]; see also *Estes, supra,* 51 Cal.App.5th at pp. 647–648 [new trial order after defense verdict was insufficient because it did not specify which of plaintiff's several asbestos exposure theories the trial court accepted].)

Further, "When . . . a statement of reasons is insufficient, an appellate court cannot remand the case to permit the trial court to correct the error but must reverse the new trial order with the result that the judgment is automatically reinstated." (*Estes, supra,* 51 Cal.App.5th at p. 649.)

C.    *Analysis*

Respondents are correct that the operative complaint alleged negligence based on a foreign object found in Bartlett's knee, and Bartlett apparently abandoned that issue at trial by not presenting any evidence to support it.[6] However, through Dr. Winternitz's testimony, Bartlett presented evidence that Respondents acted negligently not only in delaying their response to the infection, but also by failing to replace the polyethylene liner during the November 21, 2016 washout procedure. Additional evidence of

---

[6]    This determination is made without the benefit of a complete reporter's transcript. (See footnote 4, *ante*.)

9

that issue was submitted through Drs. Ballon-Landa and Daines, who stated that bacteria could attach to a prosthesis and treatment by replacement of the device can be more effective than antibiotics.

Regardless of whether we consider the delay and the polyethylene liner as two independent negligence theories or two examples of negligence under a single theory, both of those issues were submitted to the jury. Further, by stating Respondents were "negligent in the diagnosis or treatment" of Bartlett, the jury's special verdict could have rested on one or both of those issues. As such, to comply with section 657, the court was required to address both delay and the polyethylene liner in its new trial order.

Although the order references the portions of the record on which the court found Dr. Ballon-Landa's testimony insufficient to support causation, it only discusses causation in the context of delay in treatment. The trial court discredited Dr. Ballon-Landa's opinion because (1) it was inconsistent with other evidence of when the infection was first discovered, and (2) the 10-day, 80 percent success rate opinion regarding debridement surgery "did not seem to be with sufficient medical probability" and "appeared to be more his experience rather that an industry standard." These criticisms relate to timing of care, not the failure to remove the polyethylene liner.

The only portion of the court's order that could potentially relate to the polyethylene liner was the reference to Dr. Ballon-Landa's opinion "that if Mr. Bartlett had stayed on the oral antibiotics ordered by the infectious disease doctor, he would not have had the recurrence of the infection in 2017." That testimony could be relevant to causation linked to delay or to the polyethylene liner. However, to connect the court's ruling to the polyethylene liner we would have to speculate about whether and how the court considered it in that context.

10

The cessation of oral antibiotics was only mentioned in the discussion regarding the motion for judgment notwithstanding the verdict, and the trial court did not clearly cross-reference it when addressing the motion for a new trial.[7]  Even if we assume an adequate cross-reference, the mere mention of Bartlett's discontinuation of oral antibiotics does not necessarily resolve causation regarding the polyethylene liner.

" 'A defendant's negligent conduct may combine with another factor to cause harm; if a defendant's negligence was a substantial factor in causing the plaintiff's harm, then the defendant is responsible for the harm; a defendant cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing the plaintiff's harm; but conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.' " (*Lawrence v. La Jolla Beach & Tennis Club, Inc.* (2014) 231 Cal.App.4th 11, 33.)  With no discussion of the polyethylene liner, we cannot ascertain if the trial court undertook the necessary substantial factor analysis.  For example, did it find that Bartlett's 2017 infection would have occurred even if the liner was removed?  Or did it determine that oral antibiotics would have cured an infected liner despite Drs. Ballon-Landa and Daines's testimony indicating that antibiotics do not always effectively treat an infected prosthesis?  And if the court came to either determination, did it go on to consider whether

---

7    A trial court may satisfy section 657 by cross-referencing findings made in a different part of an order "so long as it makes clear to a reviewing court the basis for its decision." (*Lane v. Hughes Aircraft Co.* (2000) 22 Cal.4th 405, 413.)  In shifting its analysis to the new trial motion, the court vaguely stated, "[h]owever, the above cited evidence on a Motion for New Trial, where the Court can and should consider the credibility independently of the jury's conclusions."  It then proceeded to discuss evidence related to timing of care, with no mention of Bartlett's termination of oral antibiotics.

11

failure to remove the liner was nonetheless a substantial factor in causing Bartlett harm? These questions are not answered in the new trial order.

In sum, the jury's verdict could have been based on either delayed treatment or the failure to remove the polyethylene liner, and by only addressing delay, the trial court failed to provide an adequate statement of reasons for a new trial based on insufficient evidence. The new trial order also frustrates the dual purposes of section 657. By not addressing the polyethylene liner, the order "is not 'specific enough to facilitate appellate review,'" and "we cannot be assured it was the product of careful deliberation as the Legislature envisioned." (*Estes, supra,* 51 Cal.App.5th at p. 649.) Consequently, we must reverse the new trial order and reinstate the original judgment.[8]

---

[8] We acknowledge this result may seem harsh. But our Supreme Court has required strict interpretation of section 657 despite such criticisms, explaining, " ' "The power of the legislature [in] specifying procedural steps for new trials is exclusive and unlimited. [Citations.] The wisdom of or necessity for certain requirements are matters for legislative and not judicial consideration . . . ." ' " (*Oakland Raiders v. National Football League* (2007) 41 Cal.4th 624, 635.)

## IV. DISPOSITION

The new trial order is reversed and the judgment on the jury's verdict is reinstated.  Bartlett is awarded costs on appeal.

RUBIN, J.

WE CONCUR:


IRION, Acting P. J.


DATO, J.